STATE OF WEST VIRGINIA

*v.*

CHARLES J. WOLFE

(No. 14280)

Decided May 5, 1981.

*Kenneth P. Simmons* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Silas B. Taylor,* Assistant Attorney General, for defendant in error.

PER CURIAM:

This is an appeal by Charles Jackson Wolfe from his conviction of grand larceny in the Circuit Court of Tucker

County and his subsequent sentence of one to ten years in the West Virginia State Penitentiary. Three errors by the trial court are alleged, but we reverse solely on the basis that appellant is entitled to a new trial because of newly-discovered impeachment evidence showing that the State's key witness gave testimony in a subsequent Grant County trial which was materially different from testimony he gave against appellant in Tucker County.

The appellant and David W. Milton, Jr. were jointly indicted in Tucker County for the theft of a "tar coated metal drain tile." The tile, also referred to as a culvert pipe, was valued at $200.00 and was allegedly stolen from strip mine property belonging to Douglas Coal Company. The appellant and Milton were also jointly indicted in Grant County for the grand larceny of other property allegedly taken from the same strip mine property, but from a portion of the land located on the Grant County side of the county line.

At appellant's trial in Tucker County on March 9, 1977, he did not deny the taking of the culvert pipe but contended that Milton had hired him to haul various pieces of junk that Milton said he owned. Milton testified that the appellant hired him to haul junk, and that he had never been in the junk business prior to being employed by the appellant. Both Milton and appellant testified that they had agreed to haul junk in appellant's truck and split the proceeds after paying expenses. One Terry Vance testified that Milton had asked him to drive him to appellant's business to see if he could get appellant to haul Milton's junk. Vance also testified that Milton directed him and the appellant to the strip mine site in question and that he worked with the two of them on several additional trips. A second witness, Henry Aronhalt, testified that he met Milton at the appellant's restaurant and that he showed Milton how to use a cutting torch at a strip mine site to which Milton directed him and the appellant. On March 10, 1977, the jury found appellant guilty of grand larceny.

Subsequently, on June 1, 1977, the appellant went to trial in Grant County for the grand larceny of a "black picking table" from the strip mine site. David Milton again testified as the State's key witness, but at this second trial admitted

that he had been employed in the junk business prior to the time he met appellant. At the conclusion of the Grant County trial, the jury was unable to reach a verdict.

On November 23, 1977, appellant filed a motion for a new trial in the Circuit Court of Tucker County based in part on the newly-discovered evidence of David Milton's testimony in the Grant County trial. On November 28, 1977, a hearing on the motion for new trial was held and the court entered an order denying the motion. It is from this order that appellant appeals.

The sole issue which we address in this opinion is whether the trial court erred in refusing to grant appellant's motion for a new trial in Tucker County on the basis of David Milton's testimony against the appellant in the Grant County trial.

Milton's testimony at appellant's Tucker County trial was that he had never been involved in the junk business prior to working with the appellant; that he had no knowledge of the junk business; and that he had not been employed prior to his business arrangement with the appellant. At the Grant County trial, Milton testified that he had been employed by a junk dealer for several months in Davis, West Virginia, before he met and began working with appellant, and that he had hauled junk in connection with this employment.* The material difference between

---

* The verbatim testimony in the Tucker County trial is set forth below:

"Q. David, had you ever been involved in junk dealing or have any equipment when you got involved in this employment with Mr. Wolfe?

"A. No.

. . . .

"Q. You really don't have no knowledge of equipment or junk, do you, David? Is this correct?

"A. Yes."

On cross-examination, Milton testified to the following:

"Q. What was your work immediately prior to the time you connected up with Mr. Wolfe? What had you been doing?

"A. I hadn't been doing anything.

"Q. Hadn't you been hauling some junk in an automobile and selling it?

Milton's testimony in the Tucker County trial and his
testimony in the Grant County is clear.

"A. No.

. . . .

"Q. Where were you working over in Davis just before you went
over to see Mr. Wolfe?
"A. I wasn't doing anything."
David Milton's testimony on cross-examination at appellant's
subsequent Grant County trial is as follows:
"Q. While you were there [Davis] four or five months, were you
employed?
"A. Yes, some of the time.
"Q. By whom?
"A. Marshall Day.

. . . .

"Q. And what did Marshall Day do?
"A. He has a junk yard.

. . . .

"Q. Did you haul junk?
"A. Yes.

. . . .

"Q. What type of junk did you haul?
"A. Junk cars.

. . . .

"Q. What else?
"A. Junk steel.

. . . .

"Q. Who did you work with?
"A. Donald Johnson and Marshall Day.
"Q. You worked there for approximately four months?
"A. Somewhere around there. Three to four months.

. . . .

"Q. What kind of junk was it that you hauled to Keyser?
"A. Old cars, car frames.
"Q. In fact you hauled some iron stuff that you find around strip
mines too?
"A. No, but Marshall Day had some on his property.

. . . .

"Q. And in fact you helped bring some of it in, didn't you?
"A. Yes.
"Q. It was taken from strip mine jobs, wasn't it?
"A. Not off of 93.
"Q. Oh, other strip mine jobs! Where were they?
"A. It was straight outside of Thomas."

The general rule regarding newly-discovered evidence was stated by this Court in *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977). Syllabus Point 2 reads:

> "A new trial on the basis of newly-discovered evidence will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side. However, when the newly-discovered impeachment evidence comes within the following rules, a new trial will be granted: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) The facts must appear in his affidavit that the party was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) The evidence must be new and material, and not merely cumulative. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits."

The State contends that the facts of *Stewart* are distinguishable from those in the case before us, and thus the case is not applicable here. In *Stewart*, the defendant was found guilty of delivery of a controlled substance and the State's principal witness was a state trooper who testified that he bought marijuana from the defendant. In a motion for a new trial based upon newly-discovered evidence, the defendant relied upon testimony made in a different proceeding by the State's paid informant. The informant's testimony impeached the trooper's testimony and supported the defendant's alibi defense. We held that the testimony of the informant met the rules for granting a new trial on the basis of newly-discovered evidence.

Although we recognize that the facts in *Stewart* are different from those in this case, we believe the same rules apply whether the new impeachment evidence is in the form of a third party's testimony or testimony by the principal witness subsequent to the trial in which he testified. In either case, the issue is whether the

impeachment evidence meets the rules for awarding a new trial.

Applying the principles in *State v. Stewart* to this case, it is evident that the first three rules have been met. Therefore, we focus our attention solely on the issue of whether the newly-discovered evidence submitted by appellant is such that it ought to produce an opposite result at a second trial. If so, the newly-discovered impeachment evidence requires reversal of appellant's conviction.

One of appellant's principal contentions relating to this appeal is that he lacked the requisite criminal intent necessary to commit the crime of grand larceny. We agree that to constitute any form of larceny in this State, the theft of the property must be done with criminal intent. *See*, Syl. pt. 2 of *State v. McCoy*, 63 W.Va. 69, 59 S.E. 758 (1907) which states: "The *animus furandi*, or the intent to take and deprive another of his property, is an essential element in the crimes of robbery and larceny." It is to this essential element of intent that David Milton's testimony about his knowledge of and experience in the junk business relates.

Milton was the key prosecution witness against the appellant testifying that appellant had hired him to haul junk and that he (Milton) was totally ignorant of the junk business before he met appellant. Milton's testimony was directly refuted by the appellant who testified that it was Milton who instigated the business arrangement and who was the employer. In addition, each testified that he thought the other owned the junk which was being hauled, and there were no other witnesses who had any knowledge of the business arrangement.

Under these circumstances, David Milton's experience, or lack thereof, in the junk business was a critical fact going to the issue of intent on the part of the appellant. It is reasonable to conclude that the jury might have reached a different conclusion as to the guilt or innocence of the appellant had they had the facts which Milton testified to in the Grant County trial before them in Tucker County.

We believe the evidence of David Milton's sworn testimony in Grant County severely impeaching his testimony in Tucker County, coupled with the fact that the jury was unable to reach a verdict at appellant's second trial in Grant County, is such that there is a likelihood that an opposite result ought to be reached at a second trial in Tucker County.

Accordingly, the judgment of conviction is reversed and a new trial is awarded.

*Judgment reversed;*
*new trial awarded.*