346 S.E.2d 818

**STATE of West Virginia**

v.

**James D. MATNEY.**

**No. 16667.**

Supreme Court of Appeals of
West Virginia.

July 11, 1986.

**668**

H. Truman Chafin, Williamson, for appellant.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal by James D. Matney from the final order of the Circuit Court of Mingo County, adjudging him guilty of the offense of second degree murder and sentencing him to an indeterminate term of not less than five nor more than eighteen years in the State penitentiary. We affirm.

During the early morning hours of June 3, 1982, the defendant entered the Blue Moon Tavern at Baisden, Mingo County. Shortly thereafter, the decedent, Ermel Lester, entered the tavern and began swinging a "pipe" or tube-like instrument at the defendant. The only eyewitness testified that the defendant backed against a wall and told the decedent not to come any closer. The defendant then pulled a .22 caliber revolver from his pocket, shot the decedent five times, and left the tavern.

Although one prosecution witness, who was in the bathroom at the tavern when the fatal shots were fired, testified the shots were fired quickly and consecutively, the only eyewitness testified that there was an interval of several seconds between the first three shots and the last two shots and that the last two shots were fired while the victim was lying on the floor. The eyewitness also stated that he urged the defendant not to shoot the victim any more, but the defendant nonetheless fired two final rounds while cursing the decedent.

Further prosecution evidence at trial showed that on the night before the shooting, the defendant spoke to a friend about an earlier fight he had had with the decedent and said, "If I have another run in with him, I will kill him."

At the time of his apprehension, a .22 caliber revolver was turned over to the authorities which was later determined to have been the weapon used to kill the decedent. The defendant was placed under arrest, handcuffed, given his *Miranda* warnings, and placed in a police cruiser. One of the deputy sheriffs who arrested the defendant testified that despite the *Miranda* warnings, the defendant began to talk incessantly and made statements wherein he cursed the decedent, expressed satisfaction at having killed the decedent, and repeatedly indicated he should have killed the decedent two years ago.

This deputy sheriff further testified that the defendant claimed the decedent had hit him with a piece of pipe. However, upon

examination at the Mingo County jail, there were no marks or bruises of any kind on the defendant's body. The defense evidence included testimony that the decedent had previously communicated a threat to a third person that he would kill the defendant and that the decedent was a quarrelsome person who would start fights from time to time. However, there was no evidence that he had ever seriously hurt anyone.

An Assistant State Medical Examiner testified that he found five gunshot wounds to the decedent's body, two of which were to the chest. The gunshot wounds to the chest would have been fatal wounds. The Examiner testified that one of the fatal gunshot wounds to the chest and one of the nonfatal gunshot wounds to the head were probably inflicted while the decedent was lying on the floor with the defendant standing over him.

On appeal, the defendant cites three main errors on the part of the trial court, the first two of which are closely related and will be discussed together. First, the defendant asserts that the trial court committed reversible error by instructing the jury on both first and second degree murder without a showing of malice on the part of the defendant because the evidence established as a matter of law that the defendant had acted in the heat of passion under great provocation. Second, he contends the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that the defendant did not act in self-defense. We disagree with both contentions.

█ We discussed at some length the elements of murder and the meaning of the common law term "malice" in *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), and *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). *See also State v. Clayton*, 166 W.Va. 782, 277 S.E.2d 619 (1981). Malice, express or implied, as the defendant correctly observes, is an essential element of both first and second degree murder. Here, however, the defendant's admissions prior to, contemporaneously with, and subsequent to the shooting constituted substantial evidence of malice. This evi-

dence concerning the defendant's intent was strengthened by other factual circumstances, including the eyewitness testimony that the defendant, after some delay, shot the decedent twice while he was lying on the floor at the defendant's feet, despite the plea of the eyewitness. This version of the shooting was corroborated by the medical testimony. The evidence was plainly sufficient as to both premeditation and the intent to kill to justify the trial court in instructing the jury on first and second degree murder.

This case bears some similarity to *State v. Clark*, 175 W.Va. 58, 62, 331 S.E.2d 496, 500 (1985), where we stated that "a person is not justified in shooting or employing a deadly weapon after the adversary has been disarmed or disabled. *People v. McBride*, 130 Ill.App.2d 201, 264 N.E.2d 446 (1970); 40 C.J.S. *Homicide* § 131(b) (1944)." As was stated in Syllabus Point 5, in part, of *State v. Clifford*, 59 W.Va. 1, 52 S.E. 981 (1906): "On the trial of an indictment for murder, it is not error to give instructions ... [on] murder of the first and second degrees ... if there is any evidence tending, in any appreciable degree, to prove such offense."

█ The defendant also is correct in stating that under Syllabus Point 4 of *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978):

"Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense."

█ The evidence in this case did raise a jury question as to whether the defendant acted in self-defense. It did not, however, establish that the defendant acted in self-defense as a matter of law. Having concluded that the trial court on the evidence presented did not err in instructing the jury on both degrees of murder, we have no difficulty in also deciding that the evidence was such that a rational jury could have found beyond a reasonable doubt that the killing was not done in self-defense.

In addition to the evidence of malice, there is the evidence that the defendant was not struck by the weapon the decedent was swinging, as he asserted he had been, and the weapon itself was, according to one witness, made out of an aluminum material and was definitely not made of iron. The weapon was introduced in evidence. This evidence concerning the nature of the weapon was certainly relevant on the question of whether "the accused believed, and had reasonable grounds to believe, that he was in danger of losing his life or suffering great bodily harm." Syllabus, in part, *State v. Green,* 157 W.Va. 1031, 206 S.E.2d 923 (1974).

█ This Court has held that it is peculiarly within the province of a jury to weigh the evidence upon the question of self-defense, and a verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence. Syllabus Point 1, *State v. Schaefer,* 170 W.Va. 649, 295 S.E.2d 814 (1982), *quoting* Syllabus Point 5, *State v. McMillion,* 104 W.Va. 1, 138 S.E. 732 (1927). In Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), we formulated this more general standard of review:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the State's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

Here, the evidence was not manifestly inadequate and was sufficient to convince impartial minds of the guilt of the defen-

dant. Viewing the evidence in the light most favorable to the prosecution, the verdict is consistent with the evidence and will not be overturned. We conclude that these two assignments of error are without merit.

█ For his final assignment of error, the defendant asserts that the trial court erred by dismissing a member of the jury venire in his second trial, although the juror indicated that he would render a fair and impartial verdict in the case.* During the selection of the jurors for the defendant's second trial, the trial court asked a general question concerning whether any juror knew of a reason why he could not render a fair and impartial verdict. In response, one juror raised his hand, and upon questioning by the court in chambers, revealed that he knew of the decedent's reputation and had discussed the matter with another juror, William Harris. Upon questioning by the court in chambers, Mr. Harris stated that he knew the defendant and had known the decedent. He further stated that he had drunk alcoholic beverages at bars with the decedent, admitted that he had told the other prospective juror that he would rather not sit on the case due to his knowledge of the decedent, and indicated that the decedent was a violent person. When asked at one point if he could put this out of his mind and render a fair verdict, he stated, "I could, but it would be hard." Later, he indicated he could return a verdict solely on the law and the evidence. The State challenged him for cause and the court granted the motion.

In Syllabus Point 7 of *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982), we stated as follows:

" ' "The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syllabus Point 1, *State v. Kilpatrick,* [158 W.Va. 289], 210 S.E.2d 480 (1974).'

---

* The defendant also contends the trial court erred in dismissing the jury at the commencement of the first trial because of a problem that developed involving one of the jurors. We find

that the trial court did not abuse its sound discretion. *See State v. Schofield,* 175 W.Va. 99, 331 S.E.2d 829 (1985).

Syllabus Point 3, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)."

Furthermore, in Syllabus Point 2 of *State v. Gargiliana*, 138 W.Va. 376, 76 S.E.2d 265 (1953), we stated as follows:

" 'In order that one who has formed or expressed an opinion as to the guilt or innocence of the accused may be accepted as a competent juror on such panel, his mind must be in condition to enable him to say on his *voir dire*, unequivocally and without hesitation, that such opinion will not affect his judgment in arriving at a just verdict from the evidence alone submitted to the jury on the trial of the case.' Point 3, Syllabus, *State v. Johnson, et al.*, 49 W.Va. 684 [39 S.E. 665 (1901)]."

We have acknowledged that the object of jury selection is "to secure jurors who are not only free from prejudice, but who are also free from the suspicion of prejudice." *State v. West*, 157 W.Va. 209, 219, 200 S.E.2d 859, 866 (1973); *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927).

The action of a trial court as concerns the acceptance of jurors and the ascertainment of their eligibility is largely discretionary. *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954). In any case where a trial court is in doubt, the doubt must be resolved in favor of the juror's challenge. *State v. West, supra.* The juror's responses certainly raised a substantial question as to whether he would be able to be fair and impartial. Where there is doubt, as there was here, the doubt must be resolved in favor of the juror's challenge. We cannot say that the trial court committed error in striking this juror.

For the reasons set forth above, the judgment of the Circuit Court of Mingo County is affirmed.

Affirmed.