356 S.E.2d 629

**STATE of West Virginia**

v.

**Steven A. MARTIN.**

**No. 17184.**

Supreme Court of Appeals of West Virginia.

April 28, 1987.

Charlie Brown, Atty. Gen., and Gayle Fidler, Asst. Atty. Gen., for appellant.

Daniel R. Schuda, Steptoe & Johnson, Charleston, for appellee.

PER CURIAM:

The defendant, Steven A. Martin, was convicted by a jury in the Circuit Court of Kanawha County of burglary in the daytime by breaking and entering and aggravated robbery. He was sentenced to an indeterminate term of from one to fifteen years in the penitentiary on the burglary charge and to forty-five years in the penitentiary on the robbery conviction, the sentences to run concurrently. On appeal the defendant contends that: (1) the suppression hearing prior to trial was conducted improperly; (2) the jury was improperly instructed on the elements of robbery; and (3) his sentence on the robbery conviction was disproportionate to the crime.[1]

The incident giving rise to the charges against the defendant occurred on May 20, 1982 at the home of the victim, Charles Whited, in the South Hills area of Charleston. At approximately 6:00 p.m. Mr. Whited discovered an intruder in his home. He approached the man and a struggle ensued resulting in Mr. Whited being overpowered by the intruder who wrestled him to the floor and tied his left arm behind him with a belt. Although Mr. Whited denied keeping large amounts of money in the house he did admit to having a bag of silver coins. The intruder found the bag which also contained an antique revolver and two knives. He placed the muzzle of the gun against the victim's right ear and pulled the trigger three times. He then covered the victim's head with a quilt, held a metallic object against the victim's neck and commented on the ease with which the victim could be stabbed. Mr. Whited was unable to testify that the metallic object was definitely one of the knives from the bag.

After this, the intruder left the room and Mr. Whited assumed he had also left the house. He, therefore, removed the quilt from his head, freed his wrist from the belt, and walked toward the front of the house where he again encountered the intruder. A second struggle occurred. Mr. Whited suffered a broken nose and a fractured cheek bone when the intruder struck him in the face with a hard object causing him to fall to the floor. The intruder left shortly thereafter. Mr. Whited testified that his gun, the silver coins, his driver's license and $4.00 in cash were missing after the robbery.

The day after the robbery occurred, Detective Vance of the Charleston Police Department went to the hospital where Mr. Whited was being treated for his injuries and showed him two photographic arrays, one with color photographs and one with black and white photographs. Mr. Whited was not able to identify the robber from the color photographs but he narrowed the robber down to two photos in the black and white array. One of those two photographs was of the defendant. Mr. Whited testified that he was unable to make a positive identification in the hospital because he did not feel well, and because he was on medication and his eye was still swollen. He viewed the black and white photographic array a second time on June 2, 1982, however, and positively identified the defendant as the intruder in his home.[2] The defendant was arrested on the basis of Mr. Whited's identification.

The circuit court held an *in camera* hearing on the admissibility of the photographs and Mr. Whited's identification. At the hearing, Mr. Whited made an in-court identification of the defendant. When asked whether he could identify anyone in the courtroom as the robber, Mr. Whited asked if he could have someone in the room stand. The court agreed and Mr. Whited asked the defendant to stand and said, "He looks like the person that robbed me." Mr.

1. The defendant also assigns as error: (1) the ineffective assistance of counsel; and (2) the composition of the jury panel. We find these assignments to be without merit.

2. The victim was not shown the array of color photographs a second time. Detective Vance

testified that he made this decision because the color photograph was taken in 1979 and did not look like the defendant. He reached this conclusion when the defendant's employer was not able to identify him from the photograph.

Whited testified that the defendant looked somewhat different than he did during the robbery because he was wearing glasses in court and because he had lost weight. Although Mr. Whited took some time to make a positive identification of the defendant during the hearing, on cross-examination by defense counsel, he testified that he was sure about it. In response to a question about why it took him so long to make the identification, he responded: "I wanted to be positive. I wanted to be certain about it the same as when I looked at the photographs. I wanted to be sure that there was no discrepancy." He also testified, "I still have a vivid image of the person that was in my house on May 20, and that is what I am going by here in the courtroom today."

After reviewing the photographs and hearing testimony on the identification procedure from Mr. Whited and the police officers involved, the court ruled that the photographs shown to the victim were not unduly suggestive and that Mr. Whited's in-court identification was proper.

### I

■ The defendant contends that the suppression hearing was improperly conducted by the trial court so as to cause it to become, in itself, a suggestive pretrial identification procedure. His principal assertion is that the court erred in refusing to grant his motion to withdraw from the courtroom during the testimony of the victim. The defendant relies upon our holding in *State v. Watson*, 164 W.Va. 642, 264 S.E.2d 628 (1980). In that case the defendant, prior to trial, moved for a pretrial identification lineup to test the State's witnesses' ability to identify him. In syllabus point 2, we stated:

> Where the defendant raises the issue of suggestive identification procedures, the trial court should apply the identification test set out in *State v. Williams*, W.Va. [162 W.Va. 348] 249 S.E.2d 752 (1978). If the trial court finds the test results to be inconclusive such that there is a distinct possibility of misidentification, it may direct that the defendant be

accorded a lineup to determine if the State's witness can identify him.

In the present case, the court found that the pretrial identification procedures were not suggestive. In addition, the court noted and that the defendant did not ask for an independent lineup prior to trial. In note 2 of *State v. Watson, supra,* we held that "[a]ny such lineup motion should be made sufficiently in advance of trial to enable arrangements for it in the event it is granted. The defendant can waive his right to be present at the *in camera* hearing on the identification issue prior to the actual lineup procedures."

The defendant in this case failed to make the advance motion required to trigger the procedure set out in *State v. Watson, supra.* He merely indicated during the suppression hearing that "it may be" that the defense would move for an additional lineup depending on the court's ruling on the identification issue. We find that the court was correct in concluding that *Watson* was inapplicable to this case.

### II

The defendant also contends that the instructions given to the jury on the crime of aggravated robbery did not sufficiently incorporate language relating to intent. Intent is a necessary element of the crime of robbery. As we stated in syllabus point 2 of *State v. McCoy*, 63 W.Va. 69, 59 S.E. 758 (1907): "The animus furandi, or the intent to take and deprive another of his property, is an essential element of the crimes of robbery and larceny." *See also State v. Ferguson*, 168 W.Va. 684, 285 S.E.2d 448 (1981); *State v. Wolfe*, 166 W.Va. 815, 277 S.E.2d 640 (1981); *State v. Hudson*, 157 W.Va. 939, 206 S.E.2d 415 (1974). In *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we recognized that intent was an element of robbery even at common law.

State's Instruction No. 8 to which the defendant objects reads:

> The Court instructs the jury that if you believe from all the evidence in this case beyond a reasonable doubt that the defendant, Steven A. Martin, did on the 20th day of May, 1982, make an assault

upon Charles T. Whited and did take goods of some value from Charles T. Whited, against his will, which goods were then lawfully in his care, custody and control, then you may find the defendant, Steven A. Martin, guilty of aggravated robbery as charged in the Count III of the indictment.

The defendant objected to this instruction at trial on the grounds that it lacked the necessary element of intent. We would agree that this instruction is suspect under *State v. Harless, supra.*[3] However, instructions are to be viewed as a whole. "The giving of confusing or incomplete instructions does not constitute reversible error where a reading and consideration of the instructions as a whole cure any defects in the complained of instructions." Syllabus Point 4, *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980). "When instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing a jury verdict." Syllabus Point 6, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976). In this case, State's Instruction No. 7 which was given to the jury supplies the element of intent. That instruction states: "The Court instructs the jury that aggravated robbery is the felonious and forcible taking from the person or presence of another of goods or money of any value, by violence, the gist being the attack or assault on the person and the force employed."

In *State v. Hudson, supra,* we held that the giving of a similar instruction was not reversible error and that an instruction defining robbery as the felonious taking by force and violence sufficiently embodies the element of intent. Animus furandi has been defined as the "intent to steal, or feloniously to deprive the owner permanently of his property." Black's Law Dictionary 81 (5th ed. 1979). Felonious taking

is defined as "used in the crimes of larceny and robbery, it is the taking with intent to steal." *Id.* at 555.

The defendant points out that although the court approved and agreed to give Defendant's Instruction No. 8 which the record indicates would have been an instruction from *State v. Harless, supra,* the instruction does not appear in the record as having been given to the jury. Although it appears that the Defendant's Instruction No. 8 would have been a proper one, we decline to reverse the conviction on that point because the jury was adequately instructed on the elements of robbery including intent. The court's failure to give the instruction, if indeed it was not given, is harmless error.

### III

The defendant's final contention is that the court erred in imposing a forty-five year sentence on the aggravated robbery charge under the facts of this case. Aggravated robbery is punishable by a minimum ten-year sentence, *W.Va.Code,* 61-2-12 [1961], but a trial court has broad discretion to impose any determinate sentence from ten years to life. *State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 267 S.E.2d 736 (1980). However, while a trial court's discretion is very broad in this area, that discretion must be tempered by *W.Va. Const.* art. III, § 5 which requires sentences to be proportional to the character and degree of the offense. In *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980), we recognized that aggravated robbery sentences could be reviewed under the proportionality principle to determine if they are disproportionate: "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.'"

---

3. In *State v. Harless,* 168 W.Va. 707, 285 S.E.2d 461 (1981), we suggested that an appropriate instruction for aggravated robbery would be: "Aggravated robbery is defined as the unlawful taking and carrying away of money or goods from the person of another, or in his presence, by the use of force or violence on the victim or through the use of a dangerous or deadly weapon or instrumentality, and with the intent to steal such property."

We cannot say, under the facts and circumstances of the case before us, that the forty-five year sentence imposed by the court is so disproportionate as to shock the conscience and violate the constitution. The robbery in this case not only resulted in severe injury to the victim, a sixty-one year old man, but it took place in his home. Although the defendant did not carry a weapon to the robbery, he picked up a gun belonging to the victim, placed it next to the victim's ear, and pulled the trigger three times. The defendant was twenty-four years old when the robbery was committed. His past record includes a guilty plea to burglary in the nighttime when he was eighteen years old. Upon being released from a youth center where he was sent for that crime, he was again found guilty of burglary in the daytime. He was sentenced to an indeterminate term of from one to ten years in the penitentiary on the second burglary charge. After serving approximately two years, the defendant was released to a halfway house, prior to being placed on parole. It was while he was living in the halfway house that the crime in this case occurred.

In keeping with our holding in *State v. Houston, supra*, the trial judge set out his reasons for the forty-five year sentence on the record. In addition to the defendant's prior convictions, the court specifically noted the violence used in this crime, the fact that the robbery occurred inside the victim's home, and the fact that the defendant committed the crime while serving a prior sentence.

The defendant relies upon our holding in *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), where we concluded as a matter of law that a forty-five year sentence for a nineteen-year-old was disproportionate. In syllabus point 5 of *Cooper*, we stated:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia

Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

The facts in *Cooper* are distinguishable from those in the case at bar. In *Cooper*, the codefendant received only a one-year sentence. The defendant was only nineteen years old, no weapon was used in the crime and the victim was not seriously injured, and the defendant's only prior arrest was for public intoxication. In addition, the defendant was of subnormal intelligence and at a suppression hearing testified that he wanted to rehabilitate his life.[4] There is no such assertion or evidence in the record before us from the defendant and the judge found directly to the contrary.

We, therefore, conclude that the forty-five year sentence imposed upon the defendant, does not violate the constitutional provision that requires penalties to be proportioned to the character and degree of the offense.

Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

**4.** Cooper testified at his suppression hearing: "This is my first offense, and this is going to be my last offense, because when I get out, there won't be nothing like that anymore. That's a promise. Just like I say, this is my first time ever in the county jail, in 19 years, and I say this is going to be my last one, too."