402 S.E.2d 248

**STATE of West Virginia**

v.

**Bobby ROSS, II.**

**No. 19462.**

Supreme Court of Appeals of
West Virginia.

Nov. 29, 1990.

Dissenting Opinion Dec. 19, 1990.

Rehearing Denied March 4, 1991.

William M. Lester, Charleston, for Bobby Ross, II.

Roger W. Tompkins, Atty. Gen. and John Shank, Deputy Atty. Gen., Atty. General's Office, Charleston, for the State.

PER CURIAM:

This is an appeal by Bobby Ross, II, from an order of the Circuit Court of Kanawha County sentencing him to one hundred years in the State Penitentiary for attempted aggravated robbery, one-to-fifteen years in the Penitentiary for burglary, and one-to-five years in the Penitentiary for first-degree sexual assault. The sentences are set to run consecutively. On appeal, the defendant claims that the jury's verdict was contrary to the weight of the evidence and that the trial court erred in refusing to grant his motion for a judgment of acquittal. He also claims that the one-hundred-year sentence for attempted aggravated robbery was excessive and violated the proportionality principle contained in Article III, § 5 of the West Virginia Constitution. After reviewing the record, this Court finds no merit in the defendant's assertions and affirms the judgment of the circuit court.

According to evidence adduced by the State, at slightly after 2:00 a.m. on the morning of March 19, 1987, a male grabbed Cynthia Gillian after she entered her apartment at 1424 Lee Street, Charleston, West Virginia. He put his arms around her and told her to shut up or he would stab her. He then pushed her onto her bed, where he placed a pillow over her head, unbuttoned her jeans and touched her genital area. He asked her if she had any money. When she indicated that she had a few dollars in her purse, the assailant told her to get it. The assailant then led her, with the pillow still over her face, into her living room, and once there, he ran to turn off the light. Ms. Gillian began to scream.

Ms. Gillian's neighbor, Steve Rollins, heard the screams and summoned the police. There were police officers in the neighborhood, and they quickly proceeded to Ms. Gillian's apartment. When they got there, they heard a commotion, and a short time later a black male came out the front door with the victim in front of him. Once he got out of the door, he pushed the victim toward the police and ran away.

The police officers pursued the man and captured him a short distance away. He proved to be the defendant, Bobby Ross, II.

The subsequent police investigation of the incident revealed that the living room of Ms. Gillian's apartment was in disarray. The police retrieved a large glass mug from a sofa. A fingerprint examination of the mug later produced a large fingerprint which matched the print of the defendant's left ring finger. The police also found marks on a window which were consistent with pry marks made by a tool of some sort.

The defendant was subsequently indicted and tried for burglary, attempted aggravated robbery, and first-degree sexual assault.

During trial the defendant did not deny that he had been in Ms. Gillian's apartment on the night of his arrest. He, however, testified that he had been a voluntary social companion of Ms. Gillian for a period of five or six months prior to the date of the incident. He further testified that over that period he had procured a loan of $300.00 from her and that she had grown upset with him because of his inability to repay that loan. He indicated that on the night of the incident he had met Ms. Gillian at the Zoo Club and that she had given him a ride to her apartment in her car. He testified that at her apartment he and she became involved in a heated exchange over his failure to repay the loan. He stated that when he opened the door to leave, he was confronted by uniformed police officers and that he had subsequently been apprehended.

At the conclusion of the trial, the jury found the defendant guilty of attempted aggravated robbery, burglary, and first-degree sexual assault. For those crimes, as previously indicated, the trial court sentenced the defendant to one hundred years, one-to-fifteen years, and one-to-five years, which sentences were to run consecutively.

On appeal, the defendant claims that a review of the record shows that the jury's verdict is contrary to the weight of the evidence.

■ In syllabus point 3 of *State v. Vance,* 146 W.Va. 925, 124 S.E.2d 252 (1962), this Court stated that:

,A new trial will not be granted in a criminal case on the ground of insufficiency of the evidence, when the verdict against the defendant is based on conflicting oral testimony and the credibility of witnesses is involved, or when the verdict is supported by substantial evidence.

*See also State v. Matney,* 176 W.Va. 667, 346 S.E.2d 818 (1986); *State v. Rogers,* 167 W.Va. 358, 280 S.E.2d 82 (1981); *State v. Tapp,* 153 W.Va. 759, 172 S.E.2d 583 (1970); and *State v. Maley,* 151 W.Va. 593, 153 S.E.2d 827 (1967).

■ In the case presently before the Court, all the evidence indicates that the defendant was in the victim's house at the time of the alleged crime. He, however, denied that he attempted to commit the crimes alleged and indicated that he simply became involved in a heated exchange with the victim. The victim, on the other hand, indicated that the individual in her apartment attempted to assault her and rob her and that he had broken into her house. There was evidence that she screamed during the time the defendant was in the apartment, that the apartment was torn up and in considerable disarray, and that the defendant attempted to run away from the apartment when the police arrived.

This Court believes that the evidence as to whether a crime was committed depends upon the credibility of the witnesses involved. Rather clearly, the victim's testimony, in conjunction with the other testimony and evidence in the case, was sufficient to support a conviction. This Court believes that, essentially, the jury resolved the credibility question in favor of the victim and that, when the evidence is resolved in that manner, the jury's verdict is supported by substantial evidence.

In view of the rule set forth in syllabus point 3 of *State v. Vance, supra,* this Court believes that the defendant has failed to establish that the jury's verdict should be set aside or that he should be granted a new trial.

■ The defendant also claims that the trial court's sentence of one hundred years in the State Penitentiary for attempted aggravated robbery violates the proportionality principle set forth in Article III, § 5 of the West Virginia Constitution, which prohibits sentences which are not proportionate to the character and degree of an offense.

■ In *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980), this Court recognized that Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment to the United States Constitution expressly requires that penalties be proportioned to the character and degree of the offense. The Court further stated, in syllabus point 5 of *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), that:

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

■ In *Cooper,* the Court recognized that there are two tests to determine whether a sentence is so disproportionate that it violates our constitutional provision. The first is a subjective test and asks whether the sentence for a particular crime shocks the conscience of the Court and society. If the sentence is so offensive that it cannot pass this test, then inquiry need proceed no further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge should be resolved by more objective factors which include the consideration of the nature of the offense, the defendant's

past criminal history, and his proclivity to engage in violent acts. *See, e.g., State v. Martin,* 177 W.Va. 758, 356 S.E.2d 629 (1987); *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987); *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984).

Aggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved. The fact that lengthy sentences have been imposed for the crime has not, standing alone, in the past served as a circumstance which shocks the conscience of the Court or society. *See, e.g., State v. Martin, supra.* And in the present case, where violence was used and a potentially deadly weapon was involved, this Court's conscience is not shocked by the length of the defendant's sentence.

A further examination of the record shows that a psychologist who examined the defendant found that he had an antisocial character, as well as alcohol and substance abuse problems. He was characterized as being very rebellious and nonconforming and as having a history of ignoring social norms as well as the personal and property rights of others. He was found to act impulsively and to have a history of violent behavior. There was also an indication that, although the defendant, who was young, did not have a lengthy felony conviction record, he had been arrested on a number of occasions for relatively violent and antisocial behavior. That record indicated that he has been arrested for abduction, assault, battery, destruction of property, shoplifting, passing worthless checks, and trespassing.

The overall record of this case further shows, as previously indicated, that in the course of the commission of the crimes involved in the present case the defendant seriously and violently intruded upon the victim's personal space and person. The crimes were committed in the victim's home, and there is evidence that the defendant violently seized the victim, threatened her with a knife, and violently forced her to engage in sexual activity against her will.

In view of the nature of the offense committed, as well as the nature of the defendant's character, his psychological profile, and his previous . behavior, this Court cannot conclude that the attempted aggravated robbery sentence imposed upon him by the Circuit Court of Kanawha County violates the proportionality principle contained in Article III, § 5 of the West Virginia Constitution as alleged by the defendant or that his conviction should be reversed on the ground that the sentence is disproportionate.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

MILLER, J., dissents and files an opinion.

MILLER, Justice, dissenting:

I dissent because today's opinion approving a one-hundred-year sentence mocks Article III, Section 5 of the West Virginia Constitution: "Penalties shall be proportioned to the character and degree of the offence." It also ignores our prior cases, in which we held similar sentences to be disproportionate.

## I.

The defendant, Bobby Ross, II, was a scant nineteen years of age at the time of this incident. He had no adult felony or misdemeanor record. He had been arrested as a juvenile, but had been convicted only for destruction of property. His conviction for attempted aggravated robbery was based solely on the victim's claim that he asked for money and threatened to stab her. No knife or other weapon was found on the defendant, even though the police were outside the victim's apartment when the defendant emerged and apprehended him after a short chase. The victim suffered no physical harm. For this crime, he received a sentence of one hundred years.

## II.

The majority at least acknowledges the existence of the proportionality principle,

citing *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980),[1] and recites our general test contained in Syllabus Point 5 of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983):

> "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense."

It then proceeds to make this statement: "The fact that lengthy sentences have been imposed for the crime has not, standing alone, in the past served as a circumstance which shocks the conscience of the Court or society. *See, e.g., State v. Martin*, [177 W.Va. 758, 356 S.E.2d 629 (1987)]." 177 W.Va. at 758, 356 S.E.2d at 629.

This conclusion is simply untrue. If the majority had read *Cooper*, instead of merely citing it, it would have found that we held "this sentence shocks our sense of justice and is *on its face* grossly disproportionate[.]" 172 W.Va. at 272, 304 S.E.2d at 856–57. (Emphasis added). *Cooper* involved a nineteen-year-old who, along with a companion, attacked an intoxicated man. After knocking the victim down and hitting him several times, they made off with his wallet and credit cards. As a result of the attack, the victim was rendered unconscious and required several stitches. The defendant had a single prior arrest for intoxication. The judge gave him a forty-five-year sentence, which we vacated as being disproportionate. The factual similarities between *Cooper* and this case are apparent, except this defendant received a sentence more than twice as harsh.

Similarly, the majority does not discuss, although it does cite, *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984). This omission is for an obvious reason. *Buck* does not support today's result. The defendant in *Buck* was twenty-three when he and his companion robbed a store of approximately $1,200 after striking the proprietor on the head with a tire iron. He had no adult criminal record, but did have a rather substantial juvenile record. He was given a seventy-five-year sentence. We ruled that the sentence "violated our constitutional provision which requires penalties to be proportioned to the character and degree of the offense." 173 W.Va. at 248, 314 S.E.2d at 411.[2]

I am not aware of any aggravated robbery sentence of one hundred years which has been challenged on proportionality grounds and approved by this Court. Had the defendant in this case been convicted of first-degree murder, our most severe crime, the life sentence would enable him to be eligible for parole in ten years unless the jury declined to recommend mercy.[3] Even if he were sentenced to life for recidivism, he would be eligible for parole in fifteen years.[4]

The longest aggravated robbery sentence to withstand a proportionality challenge was seventy-five years in *State v. Glover*, 177 W.Va. 650, 355 S.E.2d 631 (1987). The defendant had severely beaten and robbed the victim and left him lying in a ditch where he almost died. The defendant had a twenty-year felony record including convictions for two malicious assaults, arson, and receiving stolen property. In short, the defendant in *Glover* committed an especially violent aggravated robbery and had a lengthy felony record which involved crimes of violence.

---

1. Syllabus Point 8 of *State v. Vance, supra,* states:

   > "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'"

2. On remand and subsequent resentencing, the defendant received a thirty-year sentence, which this Court upheld. *State v. Buck*, 178 W.Va. 505, 361 S.E.2d 470 (1987).

3. *See* W.Va.Code, 62–12–13(a)(5) (1988).

4. *See* note 3, *supra*.

The sentencing judge in this case advanced no concrete reasons why he believed a one-hundred-year sentence was appropriate. His remarks were a compendium of discursive, subjective observations not unlike the same judge's remarks set out in Appendix A to *State v. Cooper, supra.* In *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980), we required that reasons be given on the record to justify the sentence when it is attacked on proportionality grounds.[5] *Houston* was not followed here. At the very least this Court could have remanded the case for an appropriate sentencing record.

Some sixty years ago, a more enlightened court, in upholding a twenty-five-year sentence for aggravated robbery in *State v. Newman,* 108 W.Va. 642, 647-48, 152 S.E. 195, 197 (1930), made these observations:

> "An excessive punishment, instead of being a deterrent, often results in the generation of an angry public contempt of justice because of its severity, and does not reform the criminal who perceives injustice towards himself. The best course for the courts is to adapt the duration of the punishment to the prisoner's guilt, keeping in view his character and susceptibility to reformation as an ingredient. 1 Kerr's Whart. Crim. Laws, §§ 12, 22. These general observations are here made because some of our courts too often impose such severe and excessive punishments as are calculated to bring the administration of justice into public disfavor."

Today's majority opinion not only ignores these sensible observations, but compounds its failure by refusing to accept its own prior precedents. Regrettably, harshness and injustice are today's victors.

---

**5.** Syllabus Point 2 of *State v. Houston, supra,* states:

> "Where the defendant desires to challenge the length of his sentence for robbery by violence, he is entitled to do so by a timely motion to the trial court made within the time period provided by W.Va.Code, 62-12-3, for suspending a sentence, and an appropriate record shall be made to provide the factual basis for the sentence."