# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**November 17, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-0693** (Randolph County 13-F-35)

**D.S.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner D.S., by counsel Jeremy B. Cooper and John W. Cooper, appeals his convictions in the Circuit Court of Randolph County of twenty-seven counts of sexual assault in the first degree, twenty-seven counts of sexual abuse by a parent, guardian, or custodian, and twenty-seven counts of incest. Respondent, the State of West Virginia, by counsel Gordon L. Mowen, II and Michael Parker, filed a response, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2013, petitioner was indicted on fifty counts each of sexual assault in the first degree; sexual abuse by a parent guardian or custodian, and incest for the repeated sexual assault of his daughter ("the victim"). Petitioner's trial was originally scheduled for September of 2013. However, after the jury was empaneled, two jurors were struck for cause, and the court declared a mistrial. In October of 2013, the parties filed ethical complaints against the trial judge. Based upon these filings, the judge inquired of the parties if they wished to have her recused, but the parties declined.

The matter was rescheduled for trial on January 6, 2014, but was continued due to inclement weather. On the day of trial, the State sought to introduce the victim's initial statements regarding the abuse, asserting that the statement was intrinsic to the pending charges. The circuit court granted this motion after a hearing. Prior to the start of trial on February 18, 2014, the victim provided an additional statement, in which she stated that petitioner's assaults were not as frequent as she originally claimed. The State informed petitioner of the statement and provided the statement in discovery. As a result, the State moved to dismiss sixty-nine counts of the indictment.

At trial, the victim testified that she was in third grade when her father first forced her to

1

perform oral sex on him. The victim testified that this occurred multiple times a month for one year. The victim told her mother, in a written note about the abuse. Although her mother confronted petitioner, the abuse continued. The abuse stopped when the victim told a friend at school, whose father contacted police. In addition to the testimony of the victim, the jury heard testimony from petitioner's ex-wife, E.K., who corroborated the victim's testimony. E.K. testified that she confronted petitioner and he denied the abuse, but afterward she would stay up with him at night in an attempt to make sure he did not go into the victim's room. Following E.K.'s confrontation, the victim disclosed to E.K. that petitioner continued to assault her, at which time, E.K. stated that she confronted petitioner again. E.K. testified that petitioner did not deny the abuse, but stated, "I'm sorry. Daddy's a sick man and I'll never do it again."

The State also introduced the testimony of Allyson Scott. At the time of the trial, Ms. Scott was a licensed social worker for Child Protective Services and a trained forensic interviewer with thirteen years of experience interviewing children using the "Finding Words" method. "Finding Words" is a protocol used in interviews in order to create a "clear exchange of information" between an interviewer and the child, and to limit suggestibility in the interview process. The State sought to have Ms. Scott qualified as an expert in forensic interviewing. Petitioner objected, stating that he believed that she was an expert in the "Finding Words" protocol, but that the State had not qualified Ms. Scott as an expert in forensic interviewing. The circuit court thereafter declared Ms. Scott to be an expert in the "Finding Words" protocol. Ms. Scott testified that she interviewed the victim, and that the victim disclosed that petitioner abused her. Ms. Scott testified that the victim was uncomfortable during the interview; and, over petitioner's objection, also testified that discomfort is not unusual in cases of child abuse, nor is it unusual for a child to have trouble remembering the frequency of abuse.

Petitioner testified on his own behalf and denied sexually abusing the victim. Petitioner presented additional witnesses. Finally, petitioner expressed that he desired to re-call E.K. to the stand, but had not been able to do so because he did not subpoena her, and could not find her again in order to compel her to testify. The jury found petitioner guilty of the remaining eighty-one counts in the indictment, twenty-seven counts each of (1) sexual assault in the first degree; (2) sexual abuse by a parent, guardian or custodian; and (3) incest.

Petitioner filed a post-trial motion for acquittal or a new trial, claiming that one of the jurors should have been disqualified due to bias. That motion was granted and the State filed a writ of prohibition with this Court. This Court overturned the circuit court's order in *State ex rel. Parker v. Keadle*, 235 W. Va. 631, 776 S.E.2d 133 (2015). Following remand, the matter was returned to the circuit court, where petitioner filed an additional motion for a new trial, and two supplemental motions for a new trial. The circuit court denied petitioner's motions, by order entered November 30, 2015. In March of 2016, petitioner was sentenced to an indeterminate term of not less than twenty-five nor more than one hundred years for each count of first degree sexual assault; an indeterminate term of not less than ten nor more than twenty years for each count of sexual abuse by a parent, guardian, or custodian; and an indeterminate term of not less than five nor more than fifteen years for each count of incest. The circuit court further ordered that petitioner serve his sentences for four counts of first degree sexual assault consecutively to one another, and that the remaining seventy-seven counts would run concurrently to those counts, for an effective sentence of not less than 100 nor more than 400 years. Petitioner now

appeals the June 27, 2016, sentencing order.

Petitioner asserts fifteen assignments of error on appeal. We review petitioner's appeal under the following standard:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

First, petitioner complains that the circuit court erred in denying his motion for a new trial because (1) he was unable to serve his wife with a subpoena; (2) the trial judge did not disclose the full extent of her conflict of interest; and (3) the state failed to disclose exculpatory evidence. We have held that, "[a] trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." Syl. Pt. 2, *id.* (citations omitted).

Regarding the subpoena, petitioner argues that he was deprived of compulsory process pursuant to the Sixth Amendment of the U.S. Constitution, and article 3, section 14, of the West Virginia Constitution. We disagree, as any error regarding the service of the subpoena lies at the fault of petitioner. Petitioner admits that he did not serve his wife with a subpoena prior to the start of the February trial, and petitioner's counsel admitted to the trial court that although petitioner intended to call his wife during his case-in-chief, he forgot to serve her with a subpoena prior to the trial date. Petitioner does not claim that either the trial court or the State impeded his ability to subpoena the witness, or refused to enforce a duly served subpoena. "The most basic rights of criminal defendants are . . . subject to waiver." *Peretz v. United States*, 501 U.S. 923, 936 (1991), and in this matter, petitioner waived his right to call his wife as a witness when he failed to subpoena her for trial.

Petitioner also argues that he is entitled to a new trial on the basis of the appearance of impropriety due to the trial judge's failure to disclose the full extent of her conflict of interest. Petitioner points to the fact that after petitioner's trial, the judge was barred from presiding over all criminal matters due to her conflict. We have held that,

> [a] criminal defendant is entitled to an impartial and neutral judge. In a criminal trial, when a judge's conduct in questioning witnesses or making comments evidences a lack of impartiality and neutrality, or when a judge otherwise discloses that the judge has abandoned his role of impartiality and neutrality as imposed by the Sixth Amendment of the United States Constitution, we will reverse and remand the case for a new trial.

*Syl. Pt. 7, State v. Thompson*, 220 W. Va. 398, 647 S.E.2d 834 (2007). Petitioner fails to identify anywhere in the record any conduct that evidences a lack of impartiality by the trial judge in his

3

particular case. Further, petitioner fails to articulate how or why the judge was biased against him or unable to be impartial, or how he suffered any prejudice as a result.

Regarding the State's alleged failure to disclose exculpatory evidence, petitioner claims that his due process rights were violated when the State failed to provide evidence in discovery in the form of (1) a 2007 letter in which it was found that Ms. Scott, the social worker who testified in petitioner's case, presented false information in an unrelated matter; and (2) Ms. Scott's employment file with DHHR, which reflects that, after petitioner's trial, Ms. Scott was terminated for repeatedly providing false information.

As an initial matter, we find that neither the 2007 letter, nor Ms. Scott's employment file, are exculpatory evidence that was required to be provided by the State, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), as Ms. Scott was not a police officer, investigator, or agent of the police department, and her termination occurred after the conclusion of petitioner's trial. ". . . [A] prosecutor's disclosure duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982) includes disclosure of evidence that is known only to a police investigator and not to the prosecutor." Syl. Pt. 1, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). Even if the matter were considered exculpatory evidence pursuant to *Brady*, petitioner fails to establish that the failure to disclose constitutes a due process violation.

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

*Youngblood* at syl. pt. 2.

While the 2007 letter and Ms. Scott's file were pieces of evidence that could have been used to impeach Ms. Scott's credibility, there is no evidence that this information was suppressed by the State, either willfully, or inadvertently. Further, there is no indication that this evidence was material. The 2007 letter does not pertain to petitioner's case. Ms. Scott's termination had not yet occurred at the time of trial, and therefore the file concerning the circumstances of her termination would not have been available. Accordingly, we find that petitioner's claims are without merit and, the trial court did not err in denying petitioner's motion for a new trial.

Petitioner next argues that the circuit court erred in (1) failing to instruct the jury regarding exculpatory evidence[1]; and (2) failing to present petitioner's jury instruction regarding

---

[1] Regarding the purported exculpatory evidence, petitioner sought to introduce an instruction which stated that "[e]xculpatory evidence includes all evidence, facts or circumstances which tend to exonerate an accused defendant or which may establish that the accused defendant is not guilty or which create a reasonable doubt as to the guilt of the accused."

a possible motive for petitioner's ex-wife to testify at trial[2]. We disagree and find no error. A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Petitioner fails to demonstrate that the circuit court abused its discretion in denying the proposed instructions. The State notes that petitioner's proposed instruction is not the definition of exculpatory evidence provided by *Black's Law Dictionary*[3], and that the parties were permitted to argue the definition of "exculpatory evidence" in their closing arguments. Further, it appears that petitioner attempted to introduce the instruction regarding his ex-wife in an attempt to circumvent the absence of her

---

[2] The proposed instruction read as follows:

     You are instructed that termination of a parent's rights with respect to a child may be terminated merely by taking no action to prevent child abuse or by supporting the version of the other's [sic] parent's version of how a child is injured. Specifically, the law in West Virginia provides that termination of parental rights of a parent of an abused child is authorized under W.Va. Code 49-6-1, to 49-6-10, as amended where such parent contends she did not participate in the acts giving rise to the termination of parental rights but there is clear and convincing evidence that such nonparticipating parent knowingly took no action to prevent or stop such acts to protect the child. In the same regard, termination of parental rights of a parent of an abused child is authorized under W.Va. Code 49-6-1 to 49-6-10, as amended, where such non participating parent supports the other parent's version as to how a child's injuries occurred, but there is clear and convincing evidence that such version is inconsistent with the medical evidence.

     And if you find that from the evidence that E.S., the mother of HS, has temporarily lost custody to her daughter, HS, in an abuse and neglect proceeding, and is aware that she could permanently lose her parental rights to custody of her daughter HS, as well as her son, if she supports [the petitioner's] version of the facts in this trial that he did not engage in any sexual activity with HS, then you may consider these facts as evidence on the issue of her motivation and bias for her testifying against [the petitioner] in this case.

[3] Exculpatory evidence is "evidence tending to establish a criminal defendant's innocence." *Black's Law Dictionary* 675 (10TH ed. 2014).

5

live testimony in his case-in-chief. In any event, petitioner fails to show how this instruction is supported by the evidence. Accordingly, we find no abuse of discretion.

Petitioner next complains that the indictment should have been dismissed because the State's response to petitioner's motion for bill of particulars substantially amended the indictment. Petitioner asserts that, although the grand jury heard testimony that petitioner committed a number of different types of sexual acts, the language of the indictment did not indicate the "type" of sexual intercourse petitioner was accused of engaging in with the victim[4]. As a result, petitioner filed a motion to dismiss, and a motion for bill of particulars. In its bill of particulars, the State declared that petitioner was specifically accused of engaging in oral sex with the victim. We have held that,

> [a]ny substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An "amendment of form" which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced.

Syl. Pt. 3, *State v. Adams*, 193 W. Va. 277, 456 S.E.2d 4 (1995).

Petitioner alleges that the State's bill of particulars amounts to an amendment of the indictment, which required the State to re-submit the matter to the grand jury. We disagree. In its bill, the State informed petitioner that the indictment specifically accused petitioner of engaging in oral sex with the victim. This narrowed the scope of the indictment. *See State v. Johnson*, 197 W. Va. 575, 476 S.E.2d 522 (1996). As a result, petitioner was not subject to any added burden of proof; in fact, he was relieved of the burden of disproving other types of sexual acts. Furthermore, petitioner was not misled regarding the nature of the acts with which he was charged. Consequently, we find the trial court did not err in declining to dismiss the indictment based upon the State's bill of particulars.

Similarly, petitioner argues that the circuit court erred in failing to dismiss the indictment based upon false testimony that was presented to the grand jury, in the form of Cpl. Vanscoy's testimony that he was not aware of a medical examination of the child. Petitioner asserts that, in fact, Ms. Scott arranged a medical examination of the child, and that as a result, the State had constructive knowledge that an examination occurred. We have held that, "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl. Pt. 2, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989) (citation omitted). Further, "[d]ismissal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." Syl. Pt. 6 *id.* (citations omitted).

---

[4] All of the counts of the indictment alleged that petitioner engaged in "sexual intercourse, or sexual intrusion," or "sexual intercourse, sexual intrusion, or sexual contact," with the victim.

Here, petitioner fails to establish that the testimony of Cpl. Vanscoy was willfully and intentionally fraudulent. Petitioner cannot and does not allege that Cpl. Vanscoy had actual knowledge of the medical examination and purposefully misled the grand jury. Even if petitioner had established that Cpl. Vanscoy's testimony was willfully and intentionally false, petitioner fails to show how this response substantially influenced the grand jury's decision to indict, particularly in light of the fact that the jury was presented with testimony alleging one hundred and fifty counts of sexual assault or abuse against petitioner. Accordingly, we find that the circuit court did not err in denying petitioner's motion to dismiss the indictment.

Petitioner also argues that the circuit court erred in denying his motion for change of venue. Petitioner complains of negative press coverage, which he claims entitled him to a change of venue, and asserts that the number of strikes for cause during voir dire is evidence of that need.

> "'To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.' Point 2, Syllabus, *State v. Wooldridge,* 129 W.Va. 448, 40 S.E.2d 899 (1946)." Syllabus Point 1, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978).

Syl. Pt. 1, *State v. Derr,* 192 W. Va. 165, 451 S.E.2d 731 (1994). Here, petitioner ignores the fact that the strikes for cause were intended to assess the fitness of potential jurors, and is evidence that the parties conducted effective voir dire of the jury panel. "One of the inquiries on a motion for a change of venue should not be whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." Syl. Pt. 3, *id*. The mere allegation of negative press coverage to which the jury pool was potentially exposed is not sufficient to overcome petitioner's burden. As a result, we find the trial court did not err in denying the motion for change of venue.

Next, petitioner complains that the circuit court erred in declining to grant a mistrial following a prejudicial statement by the prosecuting attorney. Petitioner complains that during voir dire, the prosecuting attorney asked the panel, "In our system of justice the only way that an individual can challenge the charges that are placed against them (sic) is by going to trial. Is there anybody on this panel that believes the defendant is not guilty because he has elected to go to trial?" Petitioner asserts that this question was improper as it compels the defendant to testify on his own behalf, and deprives him of a constitutional presumption of innocence. We find petitioner's argument unpersuasive. Petitioner's argument fails to demonstrate how this question was improper or burden-shifting. Further, even if this Court were to find the question improper, petitioner fails to demonstrate how the statement prejudiced the jury or resulted in manifest injustice. "A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest

7

injustice." Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995). Accordingly, we find that the circuit court did not err in overruling petitioner's objection to this voir dire question.

Petitioner also complains that the circuit court improperly admitted evidence in the form of the testimony of Ms. Scott, a CPS worker, who offered an expert opinion regarding her interview with the victim, utilizing the Finding Words protocol. Petitioner complains that Ms. Scott was allowed to testify to matters outside of the scope of her expertise, namely, that based upon her training and experience, she believed that the victim's statements alleging abuse were more reliable than subsequent statements in which the victim minimized or recanted the allegations. Petitioner does not assert that Ms. Scott was not an expert in the Finding Words protocol, but that her testimony was improper.

We find no error. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 3, *State ex rel. Jones v. Recht*, 221 W. Va. 380, 655 S.E.2d 126, (2007) (citations omitted). As the State points out, "the Finding Words curriculum teaches an interviewer to engage in an objective, open-ended interview in order to solicit honest and clear statements from the interviewee. It is designed to limit suggestibility in order to obtain the most accurate information possible." In this context, it was not improper for Ms. Scott to testify that she believed that the victim's responses to her questions were reliable under the questioning system, which is designed to allow interviewers to assess and elicit accurate answers to questions that are not the product of suggestion. We have held that,

> [p]ursuant to *West Virginia Rules of Evidence* 702 an expert's opinion is admissible if the basic methodology employed by the expert in arriving at his opinion is scientifically or technically valid and properly applied. The jury, and not the trial judge, determines the weight to be given to the expert's opinion.

*Recht* at syl. pt. 5 (citations omitted). Further,

> [t]he testimony of expert witnesses on an issue is not exclusive and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to weight and credibility of such testimony.

Syl. Pt. 5, in part, *Wilson v. Wilson*, 227 W. Va. 157, 706 S.E.2d 354 (2010) (citations omitted). The record reflects that petitioner was free to cross-examine Ms. Scott regarding her testimony, and the jury had the benefit of not only hearing the testimony of Ms. Scott, but hearing the testimony of the victim, and assessing her credibility for themselves. Accordingly, we find that petitioner failed to prove that the circuit court's admission of this evidence was clearly wrong[5].

---

[5] Petitioner also asserts as error that the circuit court improperly admitted testimony regarding uncharged conduct. Petitioner complains that following the dismissal of sixty-nine counts of the indictment, the State sought to introduce evidence regarding these counts, which petitioner characterizes as extrinsic to the acts alleged in the indictment. However, petitioner's (continued . . .)

8

Petitioner additionally argues that the circuit court violated his right to a speedy sentencing hearing. Petitioner complains that although he was convicted on February 20, 2014, he wasn't sentenced until March 28, 2016, and this delay violated his due process rights to a speedy sentence. We disagree. The Supreme Court of the United States held that the Sixth Amendment right to a speedy trial only applies to the stage before a defendant is convicted.

> The Sixth Amendment's Speedy Trial Clause homes in on the . . . period: from arrest or indictment through conviction. The constitutional right, our precedent holds, does not attach until this phase begins, that is, when a defendant is arrested or formally accused. Today we hold that the right detaches upon conviction, when this second stage ends.

*Betterman v. Montana*, 136 S.Ct. 1609, 1613, 194 L.Ed.2d 723 (2016) (citations omitted). Further, this Court has held that, "[s]entence shall be imposed without unreasonable delay; however, the passage of time alone will not bar imposition of sentence or require a defendant's discharge. Delay must not be purposeful or oppressive; deprivation of rights depends upon the particular circumstances of each case." Syllabus, *Ball v. Whyte*, 170 W. Va. 417, 294 S.E.2d 270 (1982). The record reveals that the delay in sentence in this matter was due to extensive post-trial litigation. First, the circuit court granted petitioner a new trial, and that order was subsequently overturned by this Court. Following remand, petitioner filed additional motions which were considered by the trial court prior to the announcement of his sentence. Accordingly, we find petitioner had no right to a speedy sentencing hearing, and thus find no error.

Petitioner also argues that his sentence of 100 to 400 years of incarceration was constitutionally disproportionate. We note that, "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." *Sugg* at syl. pt. 7 (citations omitted). We apply a two-part test to determine whether a sentence violates the proportionality provisions of the Eighth Amendment of the United States Constitution and article III, section 5, of the West Virginia Constitution:

> "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an

---

argument fails to include citations to such testimony in his brief. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure,

> . . . must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

As a result, we decline to address this assignment.

offense." Syllabus point 5 of *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983).

*Syl. Pt. 2, State v. Ross*, 184 W. Va. 579, 402 S.E.2d 248 (1990). Further,

[i]n determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Syl. Pt. 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). We find that petitioner's sentence does not shock the conscience. Petitioner stands convicted of twenty-seven counts of first degree sexual assault, twenty seven counts of sexual abuse by a parent, guardian or custodian, and twenty-seven counts of incest, all committed against his minor daughter. The sheer volume of counts evidences a sustained patterned of sexual assault and abuse against a child placed in the petitioner's trust. Further, petitioner fails to show how his sentence is disproportionate given the nature of the offense, legislative purpose behind the punishment, and provides no evidence regarding a comparison of punishment from other jurisdictions. Accordingly, we find that the sentence is not constitutionally disproportionate.

Finally, petitioner complains of cumulative error. As we find no error or abuse of discretion below, we need not address this assignment of error.

For the foregoing reasons, we affirm[6].

Affirmed.

**ISSUED:** November 17, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[6] Petitioner also complains that the circuit court erred in failing to strike a particular juror for cause. As this issue was previously decided by this Court in *Keadle*, we decline to review this assignment due to the law of the case doctrine. "The general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green,* 145 W. Va. 469, 115 S.E.2d 320 (1960).