376 S.E.2d 104

**PRUDENTIAL INSURANCE CO. OF AMERICA, Plaintiff Below, Appellee,**

v.

**George COUCH, Defendant Below, Appellant.**

**No. 18375.**

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

Christine Machel, William E. Watson, Wm. E. Watson & Associates, Wellsburg, for George Couch.

Thomas A. Goodwin, Katherine A. Schultz, Goodwin & Quinn, Wheeling, for Prudential Ins. Co.

MILLER, Justice:

The defendant, George Couch, appeals from an order of the Circuit Court of Ohio County granting summary judgment to the plaintiff below, Prudential Insurance Company of America (Prudential), in an action to recover health insurance benefits erroneously paid to several health care providers and institutions under a group health insurance plan. The defendant contends that genuine issues of material fact existed pre-

cluding summary judgment. Finding that Prudential was not entitled to summary judgment, we reverse and remand for further proceedings.

## I.

The facts as revealed by the pleadings, requests for admissions, and other summary judgment material indicate that Prudential issued a group health insurance plan to Town and Country Dairy, Inc., which covered the dairy's employees and certain qualifying dependents. The defendant, as an employee of the dairy, was covered by Prudential's group policy.

In April, 1979, the defendant's nineteen-year-old son, Shawn Couch, was seriously injured in a motorcycle accident and incurred substantial medical and hospitalization expenses. Claims for these expenses were subsequently submitted to Prudential by several health care providers under the defendant's group health insurance policy.

The Prudential policy, a portion of which was made a part of the record, contained certain eligibility requirements for an employee's unmarried children. A "Qualified Dependent" was defined to exclude from eligibility any child who was nineteen years of age or older, unless the child was totally dependent upon the employee for support and maintenance and was enrolled as a full-time student in an educational institution.[1] By June 4, 1980, Prudential had paid $8,251.92 to five medical providers based upon various claim forms submitted to it. It made no further payments after this date.

In June, 1982, Prudential filed this action against the defendant, his son, and the five medical providers to which it had made payment. Prudential's complaint alleged

---

1. The pertinent policy provision states:
   "*Qualified Dependent:* An Employee's wife, unmarried child, or the husband of an Employee if the Coverage Schedule indicates the inclusion of husbands, excluding in any case—
   "(1) a legally separated spouse;
   "(2) a child nineteen or more years of age unless (a) wholly dependent upon the Em-

ployee for support and maintenance and (b) enrolled as a full-time student in an educational institution;
   "(3) a spouse or child on active duty in any military, naval or air force of any country; and
   "(4) a spouse or child who is insured for Employee Insurance under the Group Policy."

that the claim forms and related documents submitted by the defendants indicated that the defendant's son's birthday was January 27, 1961. This would have entitled him to coverage under his father's group health insurance policy as an eighteen-year-old child. Prudential asserted that on June 4, 1980, after paying some of these claims, it determined that the child's correct date of birth was January 27, 1960. This would have excluded him from coverage under the terms of the policy because he was over nineteen years of age at the time of the accident, unless he was wholly dependent on his father's support and was a full-time student.

Prudential's complaint alleged that the misrepresentations as to the son's age induced it to pay insurance benefits and that in reliance on these statements, and without knowledge that they were false, the payments were made. Prudential claimed that it was entitled to restitution due to a mistake of fact or false representations amounting to fraud. The defendant and his son answered, denying all material allegations of the complaint. The remaining defendants also answered denying any liability to Prudential.

In March, 1986, Prudential filed requests for admissions to establish that Shawn Couch had withdrawn from high school in January, 1977, and was not enrolled as a full-time student at any educational institution on April 29, 1979. These requests were deemed admitted under Rule 36(a) of the West Virginia Rules of Civil Procedure when no objection or answer was filed within thirty days as required by the rule.[2]

Prudential then filed a motion for summary judgment against the defendant and his son on its restitution claim. It attached an affidavit from one of its employees and a business record prepared by Irene Hempel, a Prudential employee, which indicated that on June 4, 1980, the defendant, George Couch, told her that his son was a full-time student at Wheeling Park High School at the time of the motorcycle accident. Ms. Hempel also stated that she immediately contacted personnel at the high school and was informed that the defendant's son had withdrawn from school in January, 1977, after finishing the ninth grade. He later entered the tenth grade, but dropped out and never returned.

Prudential also attached in support of its summary judgment motion a "Hospital Insurance Form" dated August 11, 1979, which bears the signature of both the defendant and his son. The form, completed with a typewriter, lists the defendant's son's age as eighteen. This was the only claim form placed in evidence by Prudential. The facts surrounding the actual completion of this form and the source of the information concerning the son's age were not developed during pretrial discovery and are not of record.

The defendant filed a counter affidavit in response to the motion for summary judgment, stating that he had never represented to his employer or any hospital or insurance company that his son's birthdate was other than the actual one, i.e., January 27, 1960. He also stated that his son was living at home in April, 1979, at the time of the accident and was totally dependent upon him for his support at that time. He also averred that his son was a full-time student, although he was not attending school at the time of the accident because of disciplinary problems and was attempting to be reinstated in order to complete his high school education. He further stated that if payments were made by Prudential, it was through no action taken in behalf of him or his son, and that they were without fault and should be dismissed as defendants from the action.

Following a hearing, the trial court granted summary judgment against the defendant and his son on liability. After a subsequent hearing, the trial court granted summary judgment against only the defen-

2. In material part, Rule 36(a), W.Va.R.C.P., states:

"The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney...."

dant for $8,251.92, plus interest and costs. It was upon this record that summary judgment was granted, and we granted this appeal.

## II.

Rule 56(c) of the West Virginia Rules of Civil Procedure provides, in part, that summary "judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In Syllabus Points 3 and 6 of *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held that Rule 56 of the West Virginia Rules of Civil Procedure did not infringe upon the right to a trial by jury and enunciated the principles which must be kept in mind in considering a motion for summary judgment:

"3. A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

\*　\*　\*　\*　\*　\*

"6. A person who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment."

For purposes of this discussion, we assume that the defendant's son did not meet the eligibility requirements for dependent's coverage under the group health insurance plan, as he was not enrolled as a full-time student in an educational institution at the time he was injured and obtained medical treatment.

### A.

Prudential's complaint contained two theories of recovery, one of which was fraud. The elements of a cause of action alleging fraud were recently stated in Syllabus Point 1 of *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981), where we reversed a summary judgment granted in an action for fraud in a real estate transaction:

"The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 [738] (1927)."

Prudential did not meet its burden of showing there was no genuine issue of material fact on either of its legal theories. The defendant in order to survive Prudential's summary judgment motion was only required to present evidence creating a genuine issue of material fact. We think he met this burden in his counter-affidavit where he denied making any representations to anyone other than to say that his son was born on January 27, 1960. He also denied being at fault in regard to Prudential's payments.

The circumstances surrounding the completion of the only claim form of record, which contained the defendant's signature and the erroneous birthdate, were not developed during pretrial discovery. Prudential did not depose either the defendant or his son. Furthermore, the defendant's alleged misrepresentation about his son's educational status at the time of the accident did not occur until after Prudential's payments had already been made, and thus could not have induced the payments.

The defendant's affidavit raises a genuine issue of material fact concerning the nature of his representations, if any, when he signed the hospital claim form. This affidavit also places his intent in issue, a material fact in regard to Prudential's fraud claim. We cautioned against summary judgment in cases "where issues involving motive and intent are present" in *Masinter v. Webco Co.,* 164 W.Va. 241, 243, 262 S.E.2d 433, 436 (1980). Consequently,

summary judgment should not have been granted.[3]

### B.

■ Furthermore, it is not clear that Prudential was entitled to summary judgment against the defendant under a restitution theory of unjust enrichment. It is generally recognized in the law of restitution that if one party pays money to another party (the payee) because of a mistake of fact that a contract or other obligation required such payment, the party making the payment is entitled to repayment of the money from the payee.[4] The theoretical basis for this principle is that it would be unjust to allow a person to retain money on which he had no valid claim. He would be unjustly enriched thereby, when in equity and justice it should be returned to the payor.

We have applied this general restitution principle where money has been paid to satisfy a judgment which was subsequently reversed on appeal. Syllabus Point 1, *Simmons v. Simmons*, 91 W.Va. 32, 112 S.E. 189 (1922).[5] *See also State ex rel. Emsheimer v. Duggan*, 102 W.Va. 312, 135 S.E. 270 (1926); *Bank of Williamson v. McDowell County Bank*, 66 W.Va. 545, 548, 66 S.E. 761, 762 (1909); *Simons v. Looney*, 41 W.Va. 738, 743, 24 S.E. 677, 678–79 (1896). In *Simmons*, the Court stated that the basis of the doctrine of restitution is that "the party who received the money has no basis for retaining it . . . [and] has received money of another to which he was not entitled." 91 W.Va. at 36, 112 S.E. at 190. Here, in contrast, the parties who received the money have performed services, and it is not disputed that they are entitled to payment from some source for rendering such services.

■ Prudential's restitution claim rests on several cases which have considered whether a health or hospitalization insurer may obtain restitution from a payee who has provided health care benefits where the insurer's payment is made upon a mistake of fact. It appears that in the absence of some special circumstances, restitution can be obtained. *See Goldberg v. National Life Ins. Co. of Vermont*, 774 F.2d 559 (2d Cir.1985); *United States Fidelity & Guar. Co. v. Newell*, 505 So.2d 284 (Miss.1987); *Chalupa v. Hartford Fire Ins. Co.*, 217 Neb. 662, 350 N.W.2d 541 (1984); *Blue Cross of Cent. New York, Inc. v. Wheeler*, 93 A.D.2d 995, 461 N.Y.S.2d 624 (1983); *American W. Life Ins. Co. v. Hooker*, 622 P.2d 775 (Utah 1980); 6 J. Appleman, Insurance § 4010 (1972); 46 C.J.S., *Insurance* § 1203 (1946); Annot., 79 A.L.R.3d 1113 (1977); Annot., 167 A.L.R. 470 (1947).[6]

■ However, it is important to note that the judgment in this case was against

---

**3.** We wish to make it clear that if Prudential can prove its cause of action in fraud, it may recover from the defendant the amount of payments made to third parties. *E.g., Southern Farm Bureau Life Ins. Co. v. Burney*, 590 F.Supp. 1016, 1019 (E.D.Ark.1984), *aff'd*, 759 F.2d 658 (8th Cir.1985).

**4.** The Restatement, *Restitution* § 18 (1937) states: "A person who has entered into a contract binding upon him and has paid money to the other party thereto under an erroneous belief induced by a mistake of fact that the terms of the contract required such payment, is entitled to restitution from the other, except where the mistake is only as to the time of payment." *See generally* 66 Am.Jur.2d, *Restitution and Implied Contracts* § 119 *et seq.* (1973).

**5.** Syllabus Point 1 of *Simmons* states: "One paying money under a judgment or decree which is subsequently reversed or set aside is entitled to have such money restored to him, whether such

judgment or decree is reversed or set aside for error committed by the court in rendering it, or because such court acted beyond its jurisdiction."

**6.** This rule permitting health insurers to obtain restitution against the health care provider, the payee, based upon a mistake of fact is subject to a number of limitations, such as where the insurer is grossly negligent in making payment, *e.g., Barker v. Federated Life Ins. Co.*, 111 Ga. App. 171, 141 S.E.2d 206 (1965), or where the payee is an innocent third party and such payee is a creditor of the insured and had no notice of the insurer's mistake and made no misrepresentation. *Federated Mut. Ins. Co. v. Good Samaritan Hosp.*, 191 Neb. 212, 214 N.W.2d 493 (1974); 114 A.L.R. 382 (1938); Restatement of Restitution § 14(1) (1937). Furthermore, restitution may be denied where the payee has changed positions such that recovery would be inequitable. *American W. Life Ins. Co. v. Hooker, supra;* Restatement of Restitution § 142(1) (1937); Annot., 40 A.L.R.2d 997 (1955).

the defendant, George Couch, the father. He was not the payee on any of the checks, as they were paid to the health care providers who had rendered services to his injured son. As earlier stated, restitution principles require that suit be brought ordinarily against the party receiving the payment. There do not appear to be many cases that have dealt with suits against nonpayees. The few that have conclude that a suit for restitution may not be maintained against a party who is not the payee, unless it is shown that such party was unjustly enriched because the payment satisfied an obligation that was the responsibility of such party.

This result was reached in *Blue Cross of Cent. New York, Inc. v. Wheeler,* 93 A.D.2d 995, 461 N.Y.S.2d 624 (1983), where the insurance company, unaware that its medical policy had expired, made payments to a hospital on behalf of an insured's wife. When it discovered its mistake, it brought a suit for restitution against the husband. He defended on the basis that he was not the payee. The court, after observing that the theory of restitution is based on the principle that a person should not be unjustly enriched because of another's mistake, explained what was meant by unjust enrichment: "A person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit where his debt is satisfied or where he is saved expense or loss." 93 A.D.2d at 996, 461 N.Y.S.2d at 626. (Citations omitted).

The court in *Wheeler* concluded that the husband could be held responsible if it were shown that the services rendered to the wife were necessities. This was because under the general law, a husband may be required to pay for the necessary expenses of his wife.[7] Thus, the payment to the wife's health care provider "would have satisfied his debt and saved him that expense." 93 A.D.2d at 996, 461 N.Y.S.2d at 626.

In *Aetna Life Ins. Co. v. Nix,* 85 N.M. 415, 512 P.2d 1251 (1973), the court concluded that Aetna could not recover by way of restitution from the wife some $5,000 in payments made to a hospital on behalf of her injured husband. It appears that the payment to the hospital was made on a mistake of fact caused by the wife's misrepresentations to Aetna that her husband's injury did not result from his employment. In *Aetna,* there was no showing of any obligation owed by the wife on the hospital bill.

In this case, Prudential appears to recognize these principles, but seeks to establish an obligation on the part of Mr. Couch on two theories. The first is that even though his son was over eighteen years of age at the time he was injured, his injuries have rendered him unable to care for himself and, therefore, under *James G. v. Caserta,* 175 W.Va. 406, 332 S.E.2d 872 (1985), the father had a support duty. In *Caserta,* we dealt with a child who had severe birth defects such that he was incapable of ever supporting himself and stated in Syllabus Point 10:

> "Under the common law where a child is incapable of supporting himself because of physical or emotional disabilities, the parents' obligation to support continues beyond the child's age of majority."

Where, however, the disability occurs after the child is emancipated, there is ordinarily no responsibility on the part of the parents for his hospital or medical bills in the absence of a statute. *See McKinney v. McKinney,* 175 W.Va. 640, 337 S.E.2d 9 (1985).

A further theory utilized by Prudential was its hospital authorization form which was designed to enable it to pay the insurance benefits directly to the hospital. This form was signed by the insured, George Couch, and contains the following statement: "I understand I am financially responsible to the hospital for charges not covered by this authorization." Prudential

---

7. *See Snyder v. Lane,* 135 W.Va. 887, 65 S.E.2d 483 (1951); 1 H. Clark, Law of Domestic Relations § 7.3 (1987).

argues that this establishes an obligation on the part of the defendant to pay his son's hospital bills. However, it appears this language is ambiguous and may only mean that the insured was agreeing to pay the amount not covered by the insurance authorization. There was no development of this issue below nor any showing as to whether all payments made to the health care providers were made under such authorization form. What is clear is that this matter in its present posture could not be resolved by way of summary judgment.

For the foregoing reasons, the judgment of the Circuit Court of Ohio County is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.