491 S.E.2d 35

**James T. WOLFE, Appellee**

v.

**Curtis SUTPHIN and Calvin Sutphin, Appellants.**

**No. 23853.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided July 10, 1997.

Jack W. DeBolt, Charleston, for Appellee.

Thomas P. Maroney, Charleston, for Appellants.

PER CURIAM:

This is an appeal by Curtis and Calvin Sutphin from an order of the Circuit Court of Kanawha County awarding James T. Wolfe judgment against them for $70,000.00 and prejudgment and postjudgment interest. The judgment was for restitution. On appeal, the Sutphins claim that they were never in a contractual relationship with Mr. Wolfe and that under the circumstances there was no basis for an award of restitution. They also claim that the trial court committed a number of trial errors. After reviewing the issues raised and the documents filed, this Court can find no reversible error. The judgment of the Circuit Court of Kanawha County is, therefore, affirmed.

The facts underlying this case are somewhat convoluted. Those facts show that the appellants, Curtis and Calvin Sutphin, owned a tract of improved real estate located in Marmet, Kanawha County, West Virginia. A restaurant, also owned by the Sutphins, known as The Canary Cottage was operated on this real estate, and it and the structure were leased to lessees of the Sutphins for many years. The lessees in 1985, the time relevant to this proceeding, was Judith Lynn Rogers.

A frequent customer at The Canary Cottage was James T. Wolfe, the individual who ultimately instituted the action underlying this appeal. Mr. Wolfe, an elderly man with some money, appears to have been on particularly friendly terms with Blanche Cooper, a cook employed by Judith Lynn Rogers, and her husband A.E. Kalmus who assisted in the operation of the restaurant.

The complaint in this action alleges that on August 30, 1985, Mr. Wolfe endorsed and transferred to A.E. Kalmus, a check payable to him, Wolfe, for $25,500.00. The complaint also alleges that in October, November, and December 1985, A.E. Kalmus and Judith Lynn Rogers conspired to extract additional sums of money from Mr. Wolfe by persuading him that by advancing them additional

sums of money, he would be purchasing a share of the business.

It further appears that in 1985 A.E. Kalmus and Judith Lynn Rogers, decided to attempt to purchase The Canary Cottage business and real estate from the appellants, Curtis and Calvin Sutphin. After some negotiation, they reached an agreement with the Sutphins, and on December 13, 1985, Judith Lynn Rogers entered into a written lease-purchase agreement with the Sutphins. Under the agreement, Judith Lynn Rogers agreed to lease the premises for forty-eight months for $180,000.00. At the conclusion of the lease period the Sutphins agreed to convey The Canary Cottage restaurant property to Ms. Rogers if the $180,000.00 was paid. The lease agreement provided that the $180,-000.00 was to be paid in the following manner: 1) $70,000.00 was to be paid on December 13, 1985; 2) $10,000.00 was to be paid on December 13, 1986; and 3) an additional forty-seven monthly payments of $1,168.19 were to be made over the forty-eight months of the lease; and 4) at the end of the forty-eight months a balloon payment was to be made of the residue at the conclusion of the lease.

At the time of entering into the agreement Judith Lynn Rogers apparently did not have the $70,000.00 to make the initial payment which was due on December 13, 1985.

While the negotiations for the lease-purchase agreement were being conducted, the cook, Blanche Cooper, apparently discussed the need of A.E. Kalmus and Judith Lynn Rogers for additional money with Mr. Wolfe. As a consequence, Mr. Wolfe arranged that a check for $70,000.00 be delivered to the Sutphins.

Ms. Cooper, the cook, actually delivered Mr. Wolfe's $70,000.00 check to the Sutphins. At that time she said, "Here's the check. You'll have a new partner." In the course of the development of this case, she was asked if she indicated to the Sutphins who the new partner would be, and she said that the new partner was Mr. Wolfe. She was questioned further in the following manner:

Q: Had you had any previous conversations with either Curtis or Calvin Sutphin regarding the purchase of this real estate and Mr. Wolfe?

A: Maybe a month or two before I said something to them when they came to collect the rent. I said, 'You know, he's going into partnership, don't you?' to one of them then, to Mr. Sutphin, Curtis, I believe.

Q: Did you indicate anything to them that—about Mr. Wolfe possibly—that he was going to be one of the purchasers upon the real estate?

A: Yes, I did.

Q: Did you say anything to them about the fact that his name was supposed to be on the deed?

A: I said, 'He's a partner here. He's a new partner' and I believe I did say his name will be on the new deed.

After the check was delivered to the Sutphins, A.E. Kalmus and Judith Lynn Rogers began operating The Canary Cottage under the new agreement. It does not appear that Mr. Wolfe was in any way included in the purchase arrangement or that he participated in the operation of The Canary Cottage.

In March 1996 a dispute arose between Judith Lynn Rogers and her husband and the cook, Blanche Cooper. As a result of the dispute, Ms. Rogers and her husband fired Ms. Cooper.

After Ms. Cooper was fired she apparently contacted Mr. Wolfe, and, as a consequence, an attorney for Mr. Wolfe wrote A.E. Kalmus and Judith Rogers a letter dated June 4, 1986. In that letter the attorney stated:

I represent James T. Wolfe with respect to sums advanced to you within the past year which sums, I believe total $141,-000.00. On behalf of my client I hereby request immediate repayment of these funds.

In the event satisfactory arrangements have not been made either with Mr. Wolfe or myself within two weeks of the date of this letter litigation will be filed forthwith.

The letter made no mention of any claim against the Sutphins nor was a similar letter written to the Sutphins.

A.E. Kalmus and Judith Lynn Rogers did not meet Mr. Wolfe's demand within two weeks, and Mr. Wolfe instituted the present action. In instituting the action he sued not only Mr. Kalmus and Ms. Rogers, but also the Sutphins.

In the complaint Mr. Wolfe alleged that the Sutphins were aware that Mr. Wolfe's money was being invested in The Canary Cottage and that he had no interest in the property. He asserted that they took no action to inform him that he had no interest in the property. He further alleged that the Sutphins had been unjustly enriched by what occurred. He inferred that the Sutphins were aware that he had been induced to advance monies which they ultimately received by his being misled to believe that he was acquiring an interest in The Canary Cottage and business.

The case was initially tried by the Circuit Court of Kanawha County with an advisory jury. In the course of the trial the focus of the proceedings was upon the contract between the Sutphins and Judith Lynn Rogers and whether the Court should reform the contract to include Mr. Wolfe. At the conclusion of that trial the jury and the court found that Mr. Wolfe was entitled to recover the $70,000.00 from the Sutphins. The jury also awarded Mr. Wolfe prejudgment and postjudgment interest.

During that trial the trial court instructed the jury on principles of rescission and reformation of a contract, but did not instruct the jury on principles of restitution.

The Sutphins appealed the trial court's judgment, and, in *Wolfe v. Kalmus*, 186 W.Va. 622, 413 S.E.2d 679 (1991), this Court reversed the decision of the circuit court. Essentially this Court ruled that since there was no evidence of an agreement in any form between the Sutphins and Mr. Wolfe the legal remedies of reformation and rescission were unavailable to Mr. Wolfe. The Court, however, indicated that, given the allegations in the complaint, restitution might be available under the rule set forth in *Prudential Insurance Company of America v. Couch*, 180 W.Va. 210, 376 S.E.2d 104 (1988). The Court also noted that no instruction was given which squarely addressed the remedy of restitution and its elements, and suggested that restitution might be appropriate under the facts of this case.

The case was remanded and retried under the theory of restitution, and, at the conclusion of the case, the circuit court again awarded Mr. Wolfe $70,000.00 and pre-and-postjudgment interest. It is from the judgment resulting from the second trial that the Sutphins appeal in the present case.

Four of the Sutphin's assignments of error in the present case are predicated on the assertion or implication that the trial court improperly concluded that there was a contract between the Sutphins and Mr. Wolfe. Specifically, the Sutphins assert that the trial court erred in allowing restitution because there was no basis in law or equity for the rescission or reformation of a contract between the Sutphins and Wolfes since, without any question, the evidence showed that no such contract existed. Secondly, they assert that mutuality of mistake is required to reform or remand a contract. Third, they assert that for a contract to be reformed or rescinded the party seeking rescission or reformation must show that he is free of negligence, and, fourth, they assert that the trial court's refusal to consider the statute of frauds claims constituted reversible error.

This Court believes that the Sutphins are correct in asserting that there was no contract between them and Mr. Wolfe. In fact, in this Court's earlier opinion in this case, the Court specifically stated:

> The appellants premise much of their argument upon the lack of any contractual agreement between them and the appellee. This fact is not in dispute, and we will therefore not involve ourselves in great discourse in that regard. It is recognized at the outset that no contract, in any form, existed between the Sutphins and the appellee. Likewise, as the Sutphins contend, it is an exercise in futility to attempt to discuss reformation or rescission of a non-existent contract. The Sutphins devote a substantial portion of their brief to a recitation of the law of reformation and rescission in an attempt to demonstrate the lack of applicability of those principles to the

present case. We agree with the Sutphins' contentions pertaining to that matter.

*Wolfe v. Kalmus,* 186 W.Va. at 625, 413 S.E.2d at 682.

Since there was no contract, the Sutphins are correct in asserting that there was no basis for rescission, but the Court does not believe that is of particular relevance in the present appeal. As previously stated, on retrial, the court did not base its judgment on rescission or reformation. Further, since rescission and reformation were not involved the Sutphins' allegations regarding what must be shown to support rescission or reformation and mutual mistake are irrelevant. Lastly, the Sutphins assert that they raised the issues involving the Statute of Frauds, but because the statute of frauds is a statute dealing with contractual situations, and because the trial court's decision was not predicated on contractual concepts, the Court does not believe that the trial court erred in failing to consider the Sutphin's Statute of Frauds claim.

It is apparently the Sutphins' view that Mr. Wolfe can have no recovery in the absence of a contract and, since there was no contract directly between them and Mr. Wolfe, they believe that the trial court erred in awarding Mr. Wolfe a recovery.

■ In *Prudential Insurance Company of America v. Couch, supra,* the case which, in its earlier opinion, this Court indicated might have some bearing on Mr. Wolfe's claim, this Court suggested circumstances under which restitution could be made in the absence of a contract. In Syllabus Point 4 of *Prudential Insurance Company of America v. Couch,* this Court stated:

> It is generally recognized in the law of restitution that if one party pays money to another party (the payee) because of a mistake of fact that a contract or other obligation required such payment, the party making the payment is entitled to repayment of the money from the payee.

■ It should be apparent from a reading of this syllabus point that no actual contract need exist between a party making payment of money and the payee for the doctrine of restitution to apply. The syllabus point indicates that the critical consideration is not the existence of a contract, but rather that there is a mistake of fact that a contract or other obligation does exist. The central predicate is the mistake about the existence of a contract, and not the actual existence of a contract.

■ The Sutphins next claim that the trial court erred in refusing to allow Mary Dawson, the retired postmistress of Winifred, West Virginia, to testify that Blanche Cooper who acted as the go-between for Mr. Wolfe in this case had previously worked as a clerk for her and that Ms. Cooper was discharged because of dishonesty.

Rule 608 of the W.Va. Rules of Evidence provides, in part, that:

> (b) *Specific Instances of Conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provides in Rule 609, may not be proved by extrinsic evidence ...

This Court believes that the Sutphins sought to introduce evidence of Ms. Cooper's dishonesty to attack her credibility and involve a specific instance of conduct.

In light of the rule set forth in Rule 608 of the W.Va. Rules of Evidence, this Court concludes that the trial court's refusal to allow testimony relating to Ms. Cooper's dishonesty was appropriate.

Next, the Sutphins claim that the trial court erred in refusing to give their instructions number one and number two. The Sutphins' proposed instruction number one stated:

> The Court instructs the jury that the plaintiff has alleged that Curtis and Calvin Sutphin entered into a lease-purchase agreement to sell the real estate to Judith Lynn Rogers to the exclusion of the plaintiff. You are instructed that should you find from the evidence that the plaintiff has failed to show by clear and convincing proof that Curtis and Calvin Sutphin entered into the contract with Judith Lynn Rogers to actually exclude the plaintiff, or that the evidence is equally balanced as to this issue, then your verdict shall be for Curtis and Calvin Sutphin, and you shall

answer the questions which I have provided to you on this issue in favor of Curtis and Calvin Sutphin.

The Sutphins' proposed instruction number two stated:

> You are further instructed that before the plaintiff can recover against Curtis and Calvin Sutphin, he must show by clear and convincing evidence that the Sutphins received the Seventy Thousand Dollars ($70,000.00) with actual knowledge that J.T. Wolfe was to be a party to the lease purchase agreement. Clear and convincing evidence is stronger evidence than a mere preponderance of the evidence which is normally used in civil cases. This requires testimony by the plaintiff that is clear and convincing beyond reasonable controversy.
>
> Therefore, if you find Mr. Wolfe's proof is not clear and convincing beyond reasonable controversy, then your verdict shall be for Curtis and Calvin Sutphin.

After reading the Sutphins' proposed instruction No. 1, this Court believes that it is clearly predicated upon the notion that the Sutphins intentionally excluded Mr. Wolfe from the contract entered into between them and Ms. Rogers. Further, the instruction tells the jury that if there was no evidence of such clear exclusion then the jury should return a verdict for the Sutphins.

■ As previously indicated in Syllabus Point 4 of *Prudential Insurance Company of America v. Couch, supra,* an individual may recover under the theory of restitution if that individual, because of a mistake of fact, believes that a contract or other obligation requires that he make a payment. There is no requirement under the law of restitution that a party show that he has been intentionally excluded from someone else's contract. The Sutphins' instruction No. 1 would have required the jury to return a verdict for the Sutphins even if Mr. Wolfe had established the central points necessary for recovery under the theory of restitution as set forth in Syllabus Point 4 of *Prudential Insurance Company of America v. Couch, supra,* and, in that regard, the instruction would have improperly informed the jury of the law in the case.

■ The Sutphins' proposed instruction No. 2, in effect, required Mr. Wolfe to prove his case by clear and convincing evidence. In a civil case such as this the burden of proof is not clear and convincing evidence, rather it is a mere preponderance of the evidence. See *McCormick on Evidence* § 339 (E. Cleary 3d ed.1984); and 9 J. Wigmore, *Evidence in Trials at Common Law* § 2498 (J. Chadbourn rev. ed.1981). In that the instruction imposed a burden of proof greater than that required by the law the instruction improperly stated the law and was properly refused by the trial court.

■ The Sutphins also assert that the trial court erred in refusing their motion *in limine* to prohibit introduction into evidence of the fact that Mr. Wolfe had a drinking habit.

Two rules of the W.Va. Rules of Evidence have some bearing on this assignment of error. Specifically, Rule 402 of the W.Va. Rules of Evidence provides:

> Relevant evidence generally admissible; irrelevant evidence inadmissible.
>
> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

Further, Rule 403 of the W.Va. Rules of Evidence provides:

> Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.
>
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

It appears to this Court that a substantial question in the present case was the state of Mr. Wolfe's mind at the time money was advanced to the Sutphins. Mr. Wolfe did have a drinking habit, and there was evidence that he was drinking heavily in the fall of 1985.

Because the state of Mr. Wolfe's mind potentially affected whether he was under the mistaken belief that there was some kind of agreement or relationship between him and the Sutphins, and because this question has some bearing on the question of whether he was entitled to restitution, the evidence of alcoholism, which potentially affected the state of his mind, was relevant under Rule 402 of the W.Va. Rules of Evidence. Under such circumstance the admission of alcoholism was appropriate under Rule 403 of the W.Va. Rules of Evidence, and the trial court did not err in refusing to grant the Sutphins' motion in limine.

The Sutphins next claim that the trial court erred in failing to rule in their favor since Mr. Wolfe was found to be fifty percent at fault in this matter by the advisory jury.

■ It has been recognized that "the general principle is said to be that where money is paid under a mistake of fact, it is of no defense to an action brought to recover it that the mistake arose through the plaintiff's negligence, if such negligence caused no harm." 66 Am.Jur.2d *Restitution and Implied Contracts,* § 131 (1973). See also *Sawyer v. Mid–Continent Petroleum Corporation,* 236 F.2d 518 (10th Cir.1956).

While there is some authority that if negligence causes harm to the recipient of funds received in a potential restitution situation, the harm or detrimental change of position of the recipient can bar recovery, there is evidence in the present case that the Sutphins received the initial $70,000.00 and that as the lease purchase agreement continued to be in effect, they received monthly lease purchase payments equal to the rent that they would previously had been charged on the property. Further, when Ms. Rogers defaulted on the lease purchase they recovered possession of their property just as they would have done had there been no lease purchase agreement, but a simple lease. Under such circumstances this Court does not believe that negligence on the part of Mr. Wolfe was an appropriate concern in assessing his right to recovery or that the trial court erred in not denying him recovery because the advisory jury found him fifty percent at fault in this matter.

Lastly, the Sutphins claim that Mr. Wolfe's complaint failed to state a cause of action upon which relief could be granted and that the trial court erred in failing to make specific findings of fact and conclusions of law.

In this Court's opinion as suggested in *Wolfe v. Kalmus, supra,* the previous decision rendered in this case, this Court believes that the complaint in the action does adequately allege a cause of action for recovery on the ground of restitution. Further, the trial court in this action did make findings of fact and conclusions of law. Specifically, the Court noted that:

> (T)he jury found that the plaintiff paid $70,000.00 to the defendants due to a mistake of fact that he was entering into an agreement with them for the purchase of property. It further found that the defendants knew or had reason to know of the plaintiff's mistaken belief, and that the defendants had not so changed their positions that repayment of the money to plaintiff would be to their detriment ...

The general law of restitution allows a party who pays money to another because of a mistake of fact to recover the money so paid *Prudential Insurance Co. of America v. Couch,* 180 W.Va. 210, 376 S.E.2d 104, 108 (1988).

After reviewing the entire order rendered by the circuit court, this Court concludes that that order did contain adequate findings of fact and conclusions of law.

For the reasons stated, this Court believes that the judgment of the circuit court should be affirmed.

The judgment of the Circuit Court of Kanawha County is, therefore, affirmed.

Affirmed.