IN RE ESTATE OF KLAUS DUECK, DECEASED.
PAUL D. GARNETT, PERSONAL REPRESENTATIVE OF THE ESTATE OF KLAUS DUECK, DECEASED, APPELLEE, v. GENETIC IMPROVEMENT SERVICES OF NORTH CAROLINA, INC., APPELLANT.

736 N.W.2d 720

Filed August 3, 2007.   No. S-06-538.

Andrew M. Loudon, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Adam J. Prochaska, of Harding, Shultz & Downs, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
The county court for Gage County denied the petition for allowance of claim filed by the appellant, Genetic Improvement Services of North Carolina, Inc. (GIS), against the estate of Klaus Dueck. At issue in this case is whether Dueck, when he was a member of Forward Trend, LLC, personally guaranteed amounts owed by Forward Trend to GIS.

Following trial, the county court found that Dueck neither signed a written guaranty nor orally agreed to guarantee Forward Trend's debt to GIS. In view of these findings, the county court rejected the arguments advanced by GIS that the purported written guaranty by Dueck be reformed or, in the alternative, that the purported oral guaranty by Dueck be deemed enforceable under the "leading object rule," which is an exception to the writing requirement found in the statute of frauds, Neb. Rev. Stat. § 36-202(2) (Reissue 2004). The county court denied GIS' claim. GIS appeals. We determine that the county court did not err in denying the claim. We affirm.

## STATEMENT OF FACTS
In approximately June 2002, Forward Trend contracted with GIS to repopulate Forward Trend's swine operation in accordance with a purchase and security agreement. Although the record does not contain a signed copy of this agreement, the parties do not dispute that Forward Trend entered into this agreement with GIS. An additional agreement, entitled "Addendum to Purchase and Security Agreement," composed of two parts, "Payment" and "Unconditional Personal Guaranty," is at issue in this case.

Under the purchase and security agreement, GIS agreed to provide certain replacement gilts. The addendum set forth the terms of a financing plan between the parties. Under the financing plan, Forward Trend would pay 50 percent of the invoice upon delivery, with the balance of the invoice, plus interest, due 6 months from the date of delivery. On June 26, 2002, Dueck signed the "Payment" portion of the addendum on behalf of Forward Trend. The guaranty portion of the addendum was signed by a representative of GIS.

At trial and on appeal, GIS asserts that prior to June 26, 2002, Forward Trend had discussed with Dueck his providing a personal guaranty for Forward Trend's financed debt. GIS further asserts that approximately 2 weeks after June 26, it discovered that its representative had signed the guaranty. GIS claims that it sent a new guaranty agreement to Dueck and that Dueck signed the guaranty. A witness for GIS testified that the new, executed guaranty agreement was then misplaced and has never been found. The record on appeal does not contain a copy of this guaranty agreement allegedly signed by Dueck.

Dueck died on July 18, 2004. At the time of Dueck's death, Forward Trend owed GIS certain sums under the financing plan. On October 12, GIS filed a claim with Dueck's estate for the unpaid portion of the financed debt. On December 3, the personal representative denied the claim. GIS then filed a petition for allowance with the county court.

On March 2, 2006, a trial was held on GIS' claim. Several witnesses testified, and a total of 25 exhibits were received into evidence. During the trial and again before us on appeal, GIS argues that the guaranty portion of the addendum was inadvertently signed by the GIS representative on June 26, 2002, and should be reformed to reflect a guaranty by Dueck. In the alternative, GIS argues in effect that Dueck had orally agreed to guarantee Forward Trend's debt and that the claimed oral agreement should be deemed enforceable under the "leading object rule," which is an exception to the writing requirement found in the statute of frauds, § 36-202(2).

On April 12, 2006, the county court entered an order denying GIS' claim. GIS appeals.

## ASSIGNMENTS OF ERROR

On appeal, GIS assigns two errors. GIS claims, restated, that the county court erred (1) when it refused to reform the June 26, 2002, personal guaranty portion of the written addendum to reflect a guaranty by Dueck and (2) when it concluded that the leading object rule, an exception to the statute of frauds concerning oral agreements, did not apply.

## STANDARDS OF REVIEW

■■■ Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995 & Cum. Supp. 2006), are reviewed for error on the record. *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007). The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *In re Estate of Lamplaugh, supra.* An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings. See *in re Trust of Rosenberg, supra.*

## ANALYSIS

Given our standard of review, the county court's factual findings are central to our analysis on appeal. As we read the county court's order, the court found, first, that Dueck did not execute the June 26, 2002, guaranty agreement, and second, that Dueck did not orally agree to guarantee Forward Trend's debt to GIS. Thus, the county court effectively found that there was no agreement between GIS and Dueck pursuant to which Dueck guaranteed Forward Trend's debt to GIS, and as a result, the county court denied GIS' claim against Dueck's estate. We have reviewed the record on appeal for clear error and find none. Accordingly, we find no merit to the arguments of GIS and determine that the county court did not err in denying GIS' claim.

*Written Addendum: Reformation
Is Not an Available Remedy.*

█ For its first assignment of error, GIS claims that the county court erred in refusing to exercise its equitable powers to reform the June 26, 2002, personal guaranty portion of the addendum to reflect Dueck's signature rather than the signature of the GIS representative. A court may reform an agreement when there has been either a mutual mistake or a unilateral mistake caused by fraud or inequitable conduct on the part of the party against whom reformation is sought. *Par 3, Inc. v. Livingston*, 268 Neb. 636, 686 N.W.2d 369 (2004). GIS argues in effect that the GIS representative mistakenly thought that Dueck's June 26 signature on the "Payment" portion of the addendum, which Dueck signed as a representative of Forward Trend, also served as Dueck's personal guaranty on the "Unconditional Personal Guaranty" portion of the addendum and that the representative was merely signing as a witness to Dueck's signature. GIS refers the court to testimony to the effect that Dueck later signed the personal guaranty portion of the addendum, although the latter document could not be produced for trial.

█ It is axiomatic that in order to reform a written agreement to correct a mutual mistake, some form of an agreement in writing must have existed. See, *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153, 161 (Tex. App. 1991) (stating that court was "hard pressed to determine how a nonexistent contract could be reformed"); *McClellan v. Boehmer*, 700 S.W.2d 687, 694 (Tex. App. 1985) (stating that "[e]quity may reform the instrument to reflect [the true] agreement [between the parties] but cannot create and bring into being an agreement not made by the parties"), *disapproved on other grounds, Williams v. Glash*, 789 S.W.2d 261 (Tex. 1990); *Wolfe v. Kalmus*, 186 W. Va. 622, 625, 413 S.E.2d 679, 682 (1991) (stating that "it is an exercise in futility to attempt to discuss reformation . . . of a nonexistent contract").

In its order of April 12, 2006, the county court stated the evidence presented by GIS "consist[ed] of an improbable series of events" and found that there was no written guaranty agreement between the parties. In the absence of a written agreement

between GIS and Dueck, there was nothing to reform. See, *Mandell v. Hamman Oil and Refining Co., supra*; *McClellan v. Boehmer, supra*; *Wolfe v. Kalmus, supra.*

When reviewing a judgment for errors appearing on the record, the inquiry by an appellate court is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007). The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006). We have reviewed the record in the instant case, and the record supports the county court's decision. Given this record, we determine that the county court did not err in refusing to reform the June 26, 2002, written addendum to create a personal guaranty by Dueck.

*Oral Agreement: Leading Object*
*Rule Is Inapplicable.*

For its second assignment of error, GIS generally claims that the county court erred when it concluded that the leading object rule, an exception to the statute of frauds, did not apply. GIS specifically claims that Dueck orally agreed to guarantee Forward Trend's debt and that because Dueck was a member of Forward Trend, he personally benefited from the financing arrangement between Forward Trend and GIS. GIS continues that Dueck's purported oral promise to guarantee Forward Trend's debt to GIS was enforceable under the leading object rule, which is an exception to the writing requirement of the statute of frauds. We determine there is no merit to GIS' second assignment of error.

Nebraska's statute of frauds provides in pertinent part as follows: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith . . . (2) every special promise to answer for the debt, default, or misdoings of another person." § 36-202(2). Under the leading object rule, when

> the principal object of a party promising to pay the debt of another is to promote his own interests, and not to become a guarantor or surety, and the promise is made on sufficient

consideration, it will be valid although not in writing. . . . The consideration to support an oral promise to pay the debt of another must operate to the advantage of the promisor . . . and place him under a pecuniary obligation to the promisee . . independent of the original debt . . . which obligation is to be discharged by the payment of that debt.

*Heese Produce Co. v. Lueders*, 233 Neb. 12, 19-20, 443 N.W.2d 278, 283 (1989) (citations omitted). See, also, *VSC, Inc. v. Lilja*, 203 Neb. 844, 845, 280 N.W.2d 901, 903 (1979) (stating that when " 'the leading object of a party promising to pay the debt of another is to promote his own interests, and not to become guarantor, and the promise is made on sufficient consideration, it will be valid although not in writing. In such case the promissor assumes the payment of the debt' ") (quoting *Fitzgerald v. Morrissey*, 14 Neb. 198, 15 N.W. 233 (1883)).

The leading object rule presumes that there has been an oral promise or some sort of an oral agreement. See *id.* See, also, 9 Samuel Williston, A Treatise on the Law of Contracts § 22:20 at 302 (Richard A. Lord ed., 4th ed. 1999) (stating that leading object exception applies to an oral promise when "[t]he purpose or object of the promisor is . . . to acquire the consideration for which the promise is exchanged; that is why he gives his promise . . . and if he wants the consideration enough, he will give the kind of promise for it that the promisee desires").

In the instant case, the county court found that Dueck did not orally agree to guarantee Forward Trend's debt to GIS, and it follows that the leading object rule was inapplicable. We have reviewed the evidence and conclude that the county court's decision is supported by the record. Thus, the county court did not err in concluding that the leading object rule, an exception to the statute of frauds, did not apply.

## CONCLUSION

The record supports the county court's finding that there was no written or oral guaranty agreement between Dueck and GIS. Therefore the county court did not err in denying GIS' claim against Dueck's estate. The decision of the county court is affirmed.

AFFIRMED.